# VEACH *v.* RICE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

No. 208.   Argued March 15, 18, 1889.—Decided May 13, 1889.

The judgments of Courts of Ordinary in Georgia in respect to subject matter within their jurisdiction are no more open to collateral attack than those of any other court.

The judgment of the Court of Ordinary allowing the resignation of one of two administrators upon proceedings had pursuant to statute, and discharging him after he had accounted to his co-administrator, and the latter had given a new bond, operated to exonerate the sureties upon the joint bond of both from liability for a *devastavit* committed after such order of discharge.

Cross-bills are necessary where certain defendants seek affirmative relief against their codefendants.

Where the Ordinary takes an administrator's bond in good faith, and it appears after liability has been incurred, that the names of some of the supposed sureties were signed thereto without authority, the mere fact

that the latter cannot be held, will not constitute a defence as to those who executed the bond without being misled or having relied upon the others being bound.

THE court, in its opinion, stated the case as follows:

James L. Rice and his wife, Ada S. Rice, citizens of the State of Tennessee, filed their bill of complaint, July 12th, 1881, in the Circuit Court of the United States for the Northern District of Georgia, against Frank P. Gray and his wife, Cora M., and also against said Gray as administrator of the estate of Lewis Tumlin, deceased, and also as guardian of the said Cora M., Napoleon B. Tumlin, George H. Tumlin, Lula T. Lyon, John S. Leake, John W. Gray, William T. Wofford, A. P. Wofford, Edwin M. Price, John G. B. Erwin, Henry C. Erwin, James M. Veach, Robert L. Rogers, W. I. Benham, John J. Howard, A. W. Mitchell, Mary L. Spencer, Francis M. Ford, Noah King, Thomas W. Leake, Henry C. Ramsauer, administrator, and others, all citizens of the State of Georgia, alleging that on the 2d day of June, 1875, one Lewis Tumlin, of the county of Bartow, Georgia, died intestate, leaving as his heirs-at-law, his wife Mary L. Tumlin, now Mary L. Spencer; his sons, Napoleon B. Tumlin and George H. Tumlin; his daughters, the said Ada S. Rice, formerly Ada S. Tumlin, Lula T. Lyon, formerly Lula T. Tumlin, Cora M. Gray, formerly Cora M. Tumlin; and one Lewis T. Erwin, the son of a deceased daughter, who has sold and conveyed his interest in said estate to John S. Leake, each of whom upon his death was entitled to one seventh part of his estate, his wife having elected to take a child's part in lieu of dower; that the estate was of the aggregate value of about $300,000; that Frank P. Gray and Napoleon B. Tumlin obtained temporary letters of administration on said estate on the 11th day of June, 1875, giving bond in the sum of $200,000, with Abda Johnson, William T. Wofford, John W. Gray, James M. Veach and Edwin M. Price as sureties; that on the second day of August, 1875, said Frank P. Gray and one John A. Erwin obtained permanent letters of administration on said estate and gave bond as such, in the sum of $600,000 with Abda Johnson, William

T. Wofford, John W. Gray, James M. Veach, Edwin M. Price, Noah King, A. C. Trimble, Joel H. Dyer, William W. Rich, James C. Wofford, Nelson Gilreath, J. J. Howard, Robert L. Rogers, William I. Benham, John S. Leake, A. W. Mitchell, J. G. B. Erwin, Henry C. Erwin and Lewis R. Ramsauer, intestate of Henry C. Ramsauer, and one Thomas Stakley and one Thomas Tumlin as sureties; that John A. Erwin had since that time removed from the State of Georgia to the State of Tennessee, and the said Thomas Tumlin had removed to Alabama; that Stakley had died intestate and no letters of administration had been granted on his estate until within less than twelve months before the filing of this bill; that said Abda Johnson died July 10, 1881, and his estate is now unrepresented, and for these reasons said Erwin, Tumlin, Stakley and Johnson are not made parties; that said Lewis R. Ramsauer died intestate, and Henry C. Ramsauer has qualified as his administrator, and as such is made a party, and "that the joint administration of said Frank P. Gray and John A. Erwin continued from the second day of August, 1875, until the second day of May, 1876, when the said John A. Erwin resigned, and his resignation was accepted by the Court of Ordinary of the county of Bartow." Complainants are informed and believe that Erwin resigned to avoid "the consequences of said Gray's waste and mismanagement," and thereupon "said Gray became sole administrator, against the consent and at the protest of all the heirs except Cora M. Gray and Mary L. Spencer, and gave bond as sole administrator in the sum of $140,000, with the said Abda Johnson, William T. Wofford, Edwin M. Price, Noah King, William W. Rich, John W. Gray, Nelson Gilreath, James C. Wofford, John S. Leake and Thomas W. Leake as sureties;" that on the 18th day of October, 1877, said William T. Wofford, James C. Wofford and William W. Rich applied to be relieved from their suretyship on the bond aforesaid on account of their want of confidence in the said Gray, and were so relieved, and said Gray gave a new bond as such administrator for the same sum, "with the said Abda Johnson, Nelson Gilreath, Noah King, John S. Leake, Thomas W. Leake,

Thomas Tumlin, John W. Gray, Absalom P. Wofford and Francis M. Ford as sureties;" "that on the sixth day of May, 1878, said Noah King applied to be relieved on his bond last aforesaid, and was so relieved, and the said Frank P. Gray gave another bond as administrator in the sum of $140,000, with the said Abda Johnson, Nelson Gilreath, John W. Gray, Absalom P. Wofford, John S. Leake, Thomas W. Leake and Francis M. Ford as sureties;" and "that since that time said Gray has continued to act as administrator under the bond last aforesaid and is still in possession. of the effects of said estate not heretofore disposed of."

Complainants show that Lewis Tumlin had made some advancements to some of his children, and on the second day of October, 1875, a distribution of property in kind was made, each of the heirs receiving $24,000, including the advancements; that since that time there has been no distribution, but some amounts have been received by some of the heirs; that Tumlin's estate was abundantly solvent. and his liabilities should have been long since discharged and the estate wound up and the balance distributed, " which said Gray undertook and promised to do by his several bonds aforesaid," but he has not done it, and has refused to account or to pay over to complainants their distributive share ; that Gray has been guilty of negligence, waste and fraud, which complainants proceed to charge in detail; and that said Lula T. Lyon heretofore filed her bill against said Gray as administrator, in the Superior Court of Bartow County, Georgia, seeking an account of her distributive share in said estate, and praying for an injunction to restrain said Gray from selling the real estate of said Tumlin, which he was, on or about the first day of January last, seeking to do, which injunction " had been granted by the judge of said court and had duly issued." After charging further acts of fraud and waste, the bill proceeds: " Complainants are unable to state in many instances the date at which the waste of said estate was committed by said Gray, but they are informed and believe that most of it occurred after the resignation of said Erwin, and after his present bond was given, to wit, the one bearing date the 6th of May, 1878;" that Gray is insol-

vent; that A. P. Wofford, John W. Gray and Nelson Gilreath are insolvent; that Abda Johnson left considerable property, but his affairs are embarrassed; that John S. and Thomas W. Leake and Francis M. Ford are not worth exceeding $20,300; that large sums are due Tumlin's estate, which also owns several thousand dollars' worth of real estate; that many suits are pending in favor of the estate for the recovery of money and property, and also many suits against the estate, all of which should have been tried and disposed of long since; that the estate is solvent and Gray has ample means in his hands to pay off any recovery against it, but Gray has purposely delayed bringing the suits to trial in order to postpone the final settlement of the estate; that Gray has for several years been absent from Georgia, much of his time in Mississippi, and has declared his purpose to remove to that State; that on the 18th day of June, 1881, he filed in the office of the Ordinary of said county his resignation as administrator; that the heirs will be forced to suggest some other person as his successor, and whoever may be appointed the decision may be appealed from, and pending that, "a temporary administrator with limited powers would be the only representative of said estate;" and "that unless they can have the immediate aid of a court of equity by such suitable injunction and restraining order, and the early appointment of a receiver, the interests of said estate will suffer great and immediate loss, and complainants and the other heirs-at-law of Lewis Tumlin will be injured beyond remedy." They pray for answer but not upon oath, and for an injunction and an account, "and that complainants may have a decree for their distributive share in said estate against the said Frank P. Gray and his sureties on his administration bonds aforesaid, and that the respective liabilities of said several securities may be ascertained and fixed by said decree;" and for general relief.

Copies of the various bonds were filed as exhibits with the bill and also a copy of Gray's petition to resign as administrator, with citation to the heirs of Tumlin to appear before the Ordinary on the first Monday in July, 1881, to show cause why the resignation should not be allowed and James C. Wof-

ford appointed administrator in Gray's stead, with return of service on several of the heirs and on Wofford.

September 5th, 1881, defendants Napoleon B. Tumlin, George H. Tumlin, Mary L. Spencer, and Lula T. Lyon filed their answer, admitting the allegations of complainants' bill, and saying that they have a common interest with complainants in Tumlin's estate, and join in the charges and allegations of the bill against their codefendants, and unite in the prayers in said bill contained, and pray an account and for a decree against Gray and his securities.

October 3d, 1881, Gray and "his securities" answered, denying waste or maladministration by Gray; and on the same day, "the securities upon the alleged administration bond of John A. Erwin and Frank P. Gray" answered, denying any maladministration by Erwin and Gray, or either of them, during the period of their joint administration, and setting up Erwin's discharge, the giving of a new bond by Gray, and the settlement and accounting by Erwin. A demurrer for want of jurisdiction was also filed, and, having been argued, the circuit judge delivered an opinion assigning grounds for retaining the cause, the demurrer was overruled, a receiver appointed, and an injunction issued.

On the 20th of March, 1882, the case was referred to a special master to report upon the questions of law and fact raised by, or included in, the pleadings, and to state an account.

May 19th, 1883, complainants filed a petition stating that when the original bill was filed, they were informed and believed "the following state of facts to exist, to wit: That John A. Erwin had, in April, 1876, applied to the ordinary of Bartow County, Georgia, for leave to resign his office as a co-administrator on the estate of Lewis Tumlin, deceased; that orators in connection with N. B. Tumlin, G. H. Tumlin, Mary L. Spencer, and Lula T. Lyon had objected to said resignation, and upon the trial of their caveat to said application for leave to resign the ordinary had allowed said resignation, and all the other caveators heard had appealed from that decision, except orators, who gave the matter no further attention, and

were informed and believed that said resignation had been allowed, and they have all the time, until the filing of their bill, thought and believed that said Erwin had resigned his trust and his resignation had been allowed and accepted by the court;" that they believed said resignation could not release the sureties on the bond of Gray and Erwin, and since the reference of the case and during the hearing before the master defendants have put in evidence the record of said Erwin's resignation and the proceedings on appeal, from which it appears that Erwin's resignation has never been in fact or in law allowed; that "not being parties to said appeal, they had not given any attention to it, and did not know what had been done in it, except that the jury had found against the appeal, and they believed that all other legal steps had been taken to give effect to the verdict," which they now learn was not the case; and they ask to amend: " By an averment that John A. Erwin, though not a party to said bill by reason of the fact that he resided without the jurisdiction of the court, is not only bound as the security of said Frank P. Gray in common with all the other sureties of said Gray and Erwin on the first administration bond, as claimed in the original bill, and is still in law one of the administrators of said estate, and has never legally resigned his trust as a co-administrator with Frank P. Gray on said estate, and that complainants are entitled to relief accordingly against them and all the sureties on all the administration bonds on said estate, and they pray relief accordingly." Leave to amend was granted on the same day, and the bill as amended referred to the special master.

On the 13th of September, 1883, the joint and several answer of H. C. Erwin and J. G. B. Erwin, two of the defendants, was filed, by leave of court, averring that they never had become sureties on the bond of Erwin and Gray, because they had only authorized their names to be signed to the bond of Erwin.

On the 4th of October, 1883, Ramsauer, administrator, answered, stating that he is the administrator of L. R. Ramsauer, who signed a power of attorney authorizing respondent

to sign his name as one of the sureties to Erwin's bond, and he was also authorized by H. C. Erwin and J. G. B. Erwin to sign such bond for them as attorney in fact, and that the power of attorney was changed by interlineation so as to authorize the signing of the bond of Erwin and Gray.

October 9th, 1883, the answer of James M. Veach, Robert L. Rogers, A. C. Trimble, W. I. Benham, John J. Howard and A. W. Mitchell was filed, by leave, stating that they had signed the bond made jointly by John A. Erwin and F. P. Gray as the administrators of the estate of Lewis Tumlin; that John A. Erwin resigned his administratorship in May, 1876, and he, as well as his bondsmen, were discharged "by order of the Ordinary of Bartow County," and these respondents supposed that was the end of their connection with the administration of said estate. They insist that John A. Erwin is a necessary party to this bill as proposed to be amended; that they are informed that three of their co-sureties, namely, H. C. and J. G. B. Erwin and L. R. Ramsauer, are seeking release on the ground that they only authorized their names to be signed to the bond of Erwin, and not of Erwin and Gray, and respondents say "that they were particular to make inquiry as to whether the Erwins and Ramsauer would go on said bond, and they agreed to sign said bond only upon condition that the others did." They set up Erwin's resignation upon notice to the heirs and distributees, and his discharge, which they insist discharged them from further liability; and say they know nothing of the alleged maladministration of Gray.

Replication was filed November 24, 1883.

September 22, 1883, the special master filed his report stating the death of Tumlin, the names of his heirs-at-law, the election of the widow to take a child's part, the removal of Erwin to Tennessee, and of Thomas Tumlin to Alabama; the death of Stakley, of L. R. Ramsauer, and of Abda Johnson, the appointment of Gray and Tumlin as temporary administrators and of Gray and Erwin as permanent administrators, on the second day of August, 1875, and the giving of bond by them, in the usual form, in the penal sum of $600,000, which

"bond was joint and several and payable to the Ordinary of Bartow County, Georgia, for the time being, and his successors in office." The report sets forth the return of the inventory, which alleged that "there were some wild lands and evidences of debt left out to be appraised as soon as they could be definitely ascertained;" the sale of personal property; the award of support for widow and minor; the appointment of commissioners to divide land and their return; the application by the administrators for a commission of 3 per cent on $114,456, as compensation for services in and about the division of the real estate; the allowance of the 3 per cent; the first annual return of Gray and Erwin and its approval; the application of Erwin for discharge; the order requiring the distributees to show cause; the order of discharge; the giving by Gray of a new bond; the final receipt of Gray to Erwin and the final discharge; and the appeal from the decision of the Ordinary permitting Erwin to resign and Gray to become sole administrator, to the Superior Court of Bartow County, where it was affirmed by verdict, August 4, 1876. The report says there is no record evidence that a judgment was entered upon said verdict. It further states that on June 16, 1876, Gray gave bond to Erwin reciting that Erwin transfers to Gray all commission and compensation which might be allowed Erwin for his services as administrator, and in consideration thereof Gray bound himself to pay any judgment against Erwin for any waste or loss occasioned by any act or failure of duty in any way by Erwin as administrator; sundry sales by Gray returned to the Ordinary; the discharge of W. T. Wofford, Rich, and James C. Wofford, sureties on Gray's administration bond; the new bond given by Gray, October 13, 1877; the new bond given by Gray, May 6, 1878; the second return by Gray, administrator, August 6, 1877, further time having been granted to him to make it; the return of 1878, in accordance with time given to make it; the return for 1879, 1880, and 1881; and the appointment of the receiver in this case, November 14, 1881. Various charges for commissions on interest are considered, and the subject of the inventory of wild lands, the failure to make and perfect return thereof being held to be

excusable and not to have damaged the estate. The master holds there was a valid resignation and discharge of Erwin from the office of administrator, dating from June 12, 1876, but that the sureties on the bond of Gray and Erwin were not discharged. He disallows the 3 per cent commissions on division of land, amounting to $3433.68, as excessive, and reduces it to five hundred dollars, which was subsequently disallowed by the court. He considers the state of the accounts elaborately, and holds the sureties on Gray and Erwin's bond liable "for the waste or default of the joint administration of Gray and Erwin, and since of the sole administration of Gray;" and he refers to the claim, September 20, 1883, of two of the sureties on the bond of Gray and Erwin, to wit, Henry C. and J. G. B. Erwin, that they never signed nor authorized any one to sign their names to a joint bond of Gray and Erwin, but he refused to hear evidence because the issue was not involved in the pleadings as they then stood. To this report defendants Veach, Rogers, Trimble, Benham, Howard, Mitchell, H. C., and J. G. B. Erwin, and Ramsauer filed their exceptions, and they subsequently petitioned the court to be allowed to file amended answers, which was allowed, and which amendments have heretofore been given.

November 26, 1883, the report was recommitted with directions, and sundry other reports made, and among them one, October 4, 1884, that H. C. Erwin, J. G. B. Erwin, and H. C. Ramsauer were not bound as sureties on the Gray and Erwin bond because they had not authorized their names to be signed to it, and holding that Benham, Rogers, Trimble, Mitchell, Veach and Howard were not thereby discharged. The master also reported that a judgment in the Bartow Superior Court had been entered February 16, 1884, *nunc pro tunc*, as of the July term, 1876, upon the verdict upon appeal from the discharge of Erwin by the Ordinary, but that his opinion remained unchanged that the release or discharge of Erwin as co-administrator with Gray did not discharge the sureties on said joint bond. The complainants excepted to the report of the master in favor of H. C. and J. G. B. Erwin, and Ramsauer. Defendants Veach, Howard, Trimble, Rogers, Benham

and Mitchell excepted to the master's report in discharging the two Erwins and Ramsauer and not discharging them, as well as to the forfeiture of certain commissions reported by him.

December 13, 1884, the defendant Cora M. Gray filed a supplemental answer, praying for a decree as a distributee, as did defendant John S. Leake, January 21, 1885.

Among the proofs in the case accompanying the master's reports were the petition of John A. Erwin for permission to resign his office of administrator, and the proceedings thereon. This petition was dated April 11, 1876, and set forth the issuing of letters of administration to Gray and Erwin; that Tumlin left as his heirs-at-law and distributees of his estate his widow, Mrs. Mary L. Tumlin, Napoleon Tumlin, Mrs. Lula T. Lyon, Mrs. Cora Gray, George Henry Tumlin, a minor, and Lewis T. Erwin; that Mrs. Gray is a minor, and Frank P. Gray her guardian; that Erwin is guardian of George Henry Tumlin and Lewis T. Erwin; that Mrs. Ada S. Rice, of Tennessee, is also one of the heirs-at-law of said Lewis Tumlin, and a distributee of his estate; that "your petitioner is in bad health, and from his physical infirmity is unable to give that attention to the management of said estate that he otherwise would, and that he ought to give as administrator; that most of the real estate belonging to said estate and a great portion of the personalty has been divided and delivered to the distributees of said estate; that Frank P. Gray, the co-administrator of your petitioner, is willing to give new bond and carry on said administration of said estate alone. Your petitioner, therefore, prays that he be permitted to resign his office as administrator on the estate of said Lewis Tumlin, upon a full and complete compliance with the law in such case made and provided, and your petitioner prays that each of said heirs-at-law of said Lewis Tumlin hereinbefore named may be cited by your honor to be and appear before your honor on the first Monday in May next, then and there to show cause, if any they have, why your petitioner should not resign his office of administrator as aforesaid, on his complying with the law in such case made and provided."

On the 12th of April, 1876, citation in due form was issued upon said petition by the Ordinary to the heirs-at-law and distributees of the estate of Lewis Tumlin, deceased, and to the guardians of the minor heirs named in said petition, and it was "further ordered that each of said heirs-at-law who are of full age, and the guardians of the minor heirs, be served with a copy of the foregoing petition and this citation (unless they should acknowledge service) ten days before the time appointed for hearing said petition and passing on same." Service was acknowledged of the petition and citation and further service waived, April 13, 1876, by John A. Erwin as guardian for G. H. Tumlin and as guardian for L. T. Erwin, and by Frank P. Gray as administrator and as guardian for Cora Gray; service of petition and citation was also acknowledged by Mary L. Tumlin and N. Tumlin, April 17, 1876, and the petition and citation was served on Mrs. Lula T. Lyon, April 20, 1876; affidavit was also made that on the 7th [17th] day of April, 1876, a copy of the petition of Erwin and a copy of the citation signed by the Ordinary were handed to Mrs. Ada S. Rice in person, and that at the same time Mrs. Ada S. Rice wrote the following on the original, to wit: "I acknowledge service of the within petition this April 17, 1876."

On the 1st of May, 1876, Gray filed before the Ordinary a written expression of his willingness for Erwin to resign, Gray retaining the sole administration in his own name, and proposing to file "such bond in furtherance of the same as the Ordinary may deem proper in the premises."

May 1, 1876, the Ordinary entered the following order in open court:

Court of Ordinary, Bartow County. Regular Term, May 1, 1876.

John A. Erwin, one of the adm'rs of Lewis Tumlin, deceased,
                                             *v.*
Frank P. Gray, adm'r; Frank P. Gray, guardian; Mary L. Tumlin, Napoleon Tumlin, *et al.*, heirs-at-law, etc.

Upon considering the above and foregoing application of John A. Erwin, one of the administrators on the estate of

Lewis Tumlin, late of Bartow County, deceased, for leave to resign his said office of administrator, and all the heirs-at-law of Lewis Tumlin having been duly served with citation to show cause why John A. Erwin should not be allowed to resign the office of administrator on the estate of Lewis Tumlin, deceased, and all of said heirs being represented now before the court, and no sufficient cause being shown why said Erwin should not be allowed to resign his trust, as administrator as aforesaid, and it appearing to the court that the bodily health, physical infirmities, and the health of his wife are such that he is unable to give his attention to the management of the business of said estate, and Frank P. Gray being cited to appear before the court, and having been served with said citation, and now coming before the court and expressing a willingness to accept the office of administrator of the estate of Lewis Tumlin, deceased, and it appearing to the court that the allowing of said Erwin to resign his office of administrator will not injure the interest of said estate in any way: Therefore, ordered and adjudged by the court, that the resignation of the said John A. Erwin of the office of administrator on the estate of Lewis Tumlin, deceased, be, and the same is hereby, allowed, and it is hereby further ordered and adjudged by the court that Frank P. Gray, the co-administrator of the said John A. Erwin upon the estate of the said Lewis Tumlin, deceased, be, and he is hereby, declared and appointed the sole administrator of the estate of the said Lewis Tumlin, deceased, and the said Frank P. Gray is hereby required to give a new bond and security, for the faithful administration of said estate, in the sum of one hundred and forty thousand dollars, and upon said bond and security being given, and the said John A. Erwin, upon his settling and accounting with said Frank P. Gray, the sole and remaining administrator of the estate of Lewis Tumlin, deceased, his successor, of his accounts as administrator, and the filing of the receipt of his successor in the Ordinary's office, as provided by law, and upon so doing that the said John A. Erwin, as administrator and his securities, be, and they are hereby, discharged from any and all liability for any mismanagement of said estate in the future,

but not from any past liability of the said John A. Erwin, as administrator as aforesaid.

Granted in open court, May term, 1876.

J. A. HOWARD, *Ordinary.*

On the same day the petition of Gray and Erwin was filed, showing that they had distributed in kind real estate among the heirs-at-law of the deceased amounting to $114,456, specifying the parcels and amounts, and setting up that "the responsibility and the trouble in effecting the transfer has been considerable. Your petitioners allege that they have received no compensation at all for this service thus rendered said estate, and pray your honor to pass an order allowing them 3 per cent on said sum of $114,456 as commission on the same;" whereupon the court entered an order allowing the administrators "for extra compensation for delivering and dividing to the heirs-at-law the real estate in kind belonging to said deceased," 3 per cent on the above sum.

On the 6th of May a list and schedule of all the property which had come to the possession of Gray and Erwin as administrators, and which remained unadministered and in their possession May 6, 1876, not embracing the wild lands, which "have not yet been fully located," was filed, and a receipt from Gray to Erwin for all of said property, which was acknowledged before the Ordinary and filed in his office May 22, 1876. On the 2d of May, Gray gave a new bond, as required by the order of May 1, reciting the resignation of Erwin and its allowance, and the order for the new bond, the condition being: "Now, if the above bound Frank P. Gray shall well and truly administer the goods and chattels, rights and credits, lands and tenements of the said Lewis Tumlin, deceased, which remain to be administered, and which have come to the hands, possession or knowledge of the said Frank P. Gray, or in the hands or possession of any other person or persons for him," etc., etc., in the usual form; which bond was duly attested and approved by the Ordinary, and "filed in office May 2d, 1876."

On the 12th of June, 1876, the following order was entered in open court by the Ordinary:

Court of Ordinary, Bartow County. Adjourned Term.
June 12, 1876.

John A. Erwin, Adm'r est. Lewis Tumlin, dec'd.

Upon considering the above application of John A. Erwin, one of the joint administrators of the estate of Lewis Tumlin, late of Bartow County, deceased, for a discharge, and the said John A. Erwin, as administrator, having by order of this court been permitted to resign said trust, and which resignation has been accepted by the court, and Frank P. Gray, his co-administrator, having consented to accept the entire administration of said estate, and having given new bond. and security, as ordered by the court, and the said John A. Erwin having filed a return showing the property that has been administered belonging to said estate, and having filed the said Frank P. Gray's receipt for all the unadministered property belonging to said estate, and being satisfied that said return and receipt contain all the property administered and not administered belonging to said estate which has come into the hands of John A. Erwin, as administrator, it is therefore ordered that said John A. Erwin be, and he is hereby, fully discharged from the office of administrator on the estate of Lewis Tumlin, deceased, and that letters of dismission do issue to him.

Granted in open court June adj'd term, 1876.

J. A. HOWARD, *Ordinary.*

From this order Mrs. Mary L. Tumlin, Mrs. Lula T. Lyon and Napoleon Tumlin appealed to the Superior Court of Bartow County, where the appeal was dismissed as to Mrs. Mary L. Tumlin at her request, and upon trial the jury returned the following verdict, August 4, 1876: " That the jury find in favor of John A. Erwin, and that his resignation be allowed."

An order appears of record in the Superior Court, headed as follows:

" Appeal to the Superior Court of Bartow Co., Ga., from the order in the Ordinary's court of said county permitting John A. Erwin to resign and F. P. Gray to become sole adm'r of said estate, and required to give new bond, and Gray to become sole adm'r of said estate, and refusing to allow Theodore

Smith to be co-adm'r of said estate. Appeal from the above decision of the Ordinary made May 1st, 1876, and carried to the Superior Court of said Co., by whom the decision of said Ordinary was affirmed at the July term, 1876."

This order granted thirty days to the appellants to perfect their motion for a new trial and agree upon the evidence, the motion to be heard in vacation, so that if the motion for a new trial be refused the appellants can take the case to the Supreme Court of Georgia at the next January term. Nothing further appears to have been done in the premises, but at the January term, 1884, of the Bartow Superior Court, due notice having been given to the heirs and distributees and to the receiver in this case, the Superior Court entered judgment *nunc pro tunc* upon the verdict rendered in 1876, affirming the allowance of Erwin's resignation.

On the 22d day of January, 1885, a final decree was rendered, by which, after overruling the various exceptions to the reports of the special master, it was among other things adjudged and decreed that Gray was liable on his several administration bonds for the sum of $47,122.44, the sureties on the bond of Erwin and Gray being held liable for the whole amount, and the sureties on the other bonds for different parts of said gross sum, and from that decree appeal was prosecuted to this court by James M. Veach, J. J. Howard, W. I. Benham, R. L. Rogers, A. C. Trimble and A. W. Mitchell, a special order being entered allowing the appeal to the above named, as being those only of the sureties on the joint bond of Gray and Erwin, who excepted to the reports of the special master upon the grounds taken by them, and they alone of the defendants being interested in the questions made by their exceptions, and it being made to appear to the court that they had notified all the other defendants of their purpose to appeal.

The following sections from the Code of Georgia, third edition, 1882, were in force at the time of the transactions in question:

§ 331. Courts of Ordinary have authority to exercise original, exclusive and general jurisdiction of the following subjects matter:

1. Probate of wills.   2. The granting of letters testamentary, of administration, and the repeal or revocation of the same.   3. Of all controversies in relation to the right of executorship or administration.   4. The sale and disposition of the real property belonging to, and the distribution of, deceased persons' estates.   5. The appointment and removal of guardians and minors and persons of unsound mind.   6. All controversies as to the right of guardianship.   7. The auditing and passing returns of all executors, administrators and guardians.   8. The discharge of former, and the requiring of new surety from administrators and guardians.   9. The issuing commissions of lunacy in conformity to law.   10. Of all such other matters and things as appertain or relate to estates of deceased persons, and to idiots, lunatics and insane persons.   11. Of all such matters as may be conferred on them by the constitution and laws.   12. [And concurrent jurisdiction with the county judge in the binding out of orphans and apprentices, and all controversies between master and apprentice.]

§ 2150. The contract of suretyship is one of strict law, and his liability will not be extended by implication or interpretation.

§ 2490. Administration *de bonis non* is granted upon an estate already partially administered, and from any cause unrepresented.

§ 2499. If administration has been granted to more than one, upon the death of either the right of administration survives to the other.

§ 2500. Administration may be granted to other persons than him in whose name the citation issues, and without a new citation being published.

§ 2505. Every administrator, upon his qualification, shall give bond, with good and sufficient security, to be judged of by the Ordinary, in a sum equal to double the amount of the estate to be administered; such bond shall be payable to the Ordinary for the benefit of all concerned, and shall be attested by him or his deputy, and shall be conditioned for the faithful discharge of his duty as such administrator, as required by law. A substantial compliance with these requisitions for the bond

shall be deemed sufficient, and no administrator's bond shall be declared invalid by reason of any variation therefrom, as to payee, amount, or condition, where the manifest intention was to give bond as administrator, and a breach of his duty as such has been proved.

§ 2510. If two or more administrators unite in a common bond, all the sureties are bound for the acts of each administrator, and the administrators themselves are mutual sureties for each other's conduct.

§ 2512. In all cases of removal of an administrator for any cause, the sureties on his bond are liable for his acts in connection with his trust, up to the time of his settlement with an administrator *de bonis non*, or the distributees of the estate.

§ 2514. If there are more administrators than one, and complaint is made against one only, and his letters are revoked, the entire trust remains in the hands of the other; and with him as to an administrator *de bonis non* the removed co-administrator must account.

§ 2610. Any administrator who, from age or infirmity, removal from the county, or for any other cause, desires to resign his trust, may petition the Ordinary, stating the reasons, and the name of a suitable person qualified and entitled to and willing to accept the trust; whereupon the Ordinary shall cite such person, and the next of kin of the intestate, to appear and show cause why the order should not be granted. If no good cause be shown, and the Ordinary is satisfied that the interest of the estate will not suffer, the resignation shall be allowed, and the administrator shall be discharged from his trust whenever he has fairly settled his accounts with his successor and filed with the Ordinary the receipt in full of such successor. Minors in interest shall be allowed five years from the time of their arrival at majority to examine into and open such settlement.

*Mr. P. L. Mynatt* and *Mr. N. J. Hammond* for appellants.

*Mr. W. K. Moore*, for appellees, contended as follows as to the points passed upon by the court in its opinion :

I. The minors were not parties to the proceedings upon Erwin's resignation, and not being parties, it was not effectual as against them. John A. Erwin, in seeking to resign his trust, and F. P. Gray, who wanted the sole administration, both had interest adverse to the three minor heirs. In such case the acknowledgment of service of John A. Erwin, as guardian for the minors, G. H. Tumlin and L. T. Erwin, was insufficient and ineffectual, as well as the acknowledgment of F. P. Gray, as guardian of Cora Gray, minor. This is the only service shown in the record and is the only service directed to be made in the citation itself. Code of Georgia, § 1821; Act of February 25, 1876, Session Acts of Georgia of 1876, 103.

II. Erwin's resignation, if valid, did not accomplish his release as security, nor the release of the appellants who were sureties on the joint and several bond of Frank P. Gray and John A. Erwin. Section 2510 of the Code of Georgia, which was the law at that time, provides that if two or more administrators unite in a common bond, all the sureties are bound for the acts of each administrator, and the administrators themselves are mutual sureties for each other's conduct. This provision of law is part of the bond, and should be read as if inserted in it. *Von Hoffman* v. *Quincy,* 4 Wall. 535, 550.

The act of February 10, 1854, incorporated into the Code of Georgia as § 2610, first made provision for the resignation of an executor. It seems to contemplate the resignation of a sole administrator, but is doubtless broad enough, under § 4 of the Code, paragraph 4, to include one of two or more joint administrators. That paragraph reads: "The singular or plural number shall each include the other, unless expressly excluded." Nevertheless it has no application to that case, because the whole trust remained in the survivor by operation of law. The common law is in force in Georgia, (Cobb's Digest, 721,) and by it the power of an executor survives on the death of his co-executor. And so, if administration is granted to two, and one dies, the other becomes sole administrator, and all the power of the office survives to him. 2 Williams on

Executors, citing. *Jocomb* v. *Harwood*, 2 Ves. Sen. 267, 268; *Flanders* v. *Clark*, 1 Vés. Sen.; see also, *Hudson* v. *Hudson*, 1 Atk. 460, *S. C., cas. temp.* Talb. 127; 2d Com. Dig. B. 7; Bac. Abr. 56, tit. Executors (G.).   In case of death the entire interest vests in the survivor.

The Ordinary could not make a new appointment to the office of administrator while it was not vacant.   *Griffith* v. *Frazier*, 8 Cranch, 9; *Kane* v. *Paul*, 14 Pet. 33; *Braxton* v. *State*, 25 Indiana, 82; *Pritchard* v. *State*, 34 Indiana, 137; Brandt on Suretyship and Guarantee, § 498, and cases cited; *Clarke* v. *State*, 6 G. & J. 288; *S. C.* 26 Am. Dec. 576; *Kirby* v. *Turner*, Hopk. Ch. 309; *Green* v. *Hanberry*, 2 Brock. 403. And in fact he did not attempt to exercise such a power. The order granted at May term declares that the resignation of Erwin be allowed, and that Frank P. Gray, the co-administrator of said John A. Erwin, be, and he is hereby, declared and appointed the sole administrator of the estate, and required to give new bond, etc.   The Ordinary by this order declared just what the law declared in such cases.   If he had regarded the office vacant and the appointment a new one it would have been his duty to administer to him the oath provided for every administrator in § 2504 of the Code, and it would also have been his duty to appoint and grant to him letters of administration *de bonis non* under § 2490 of Code. "Administration *de bonis non* is granted upon an estate already partially administered and from any cause unrepresented."

As to the discharge of the sureties, we admit that, as there was a law in force in Georgia at the date thereof authorizing the discharge of sureties, these sureties could have been discharged in the manner pointed out by that law without impairing the obligation of this contract, and that is so because such law then existing became part of the contract, as hereinbefore contended.   We maintain, however, that the terms and conditions of that law must be strictly complied with; it is not only law but also contract.

Section 2509, Code of Georgia, makes the provisions of the code in reference to relief of sureties on guardians' bonds applicable to sureties on administrators' bonds, and said provis-

ions are found in the Code, § 1817. This section of the Code has been so fully construed and passed upon by the Supreme Court of Georgia that I refer to their decision to show that there was not and could not be any valid discharge of the sureties in this case. See *Dupont* v. *Mayo*, 56 Georgia, 304.

III. The second report of the special master was in error in holding that the discharge of J. G. B. Erwin, H. C. Erwin and L. S. Ramsauer because their names had been improperly signed to the joint bond of Gray and Erwin, administrators, by their attorney-in-fact, did not discharge all the sureties. *Lewis* v. *Gordon County*, 70 Georgia, 486; *Mathis* v. *Morgan*, 72 Georgia, 517; *Dair* v. *United States*, 16 Wall. 1; *State* v. *Lewis*, 73 North Carolina, 138; *Cutler* v. *Roberts*, 7 Nebraska, 4; *Nash* v. *Tugate*, 32 Grattan, 595; *Trustees of Schools* v. *Sheik*, 119 Illinois, 579; *Carroll County* v. *Ruggles*, 69 Iowa, 269.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

By the order of the Ordinary of May 1, 1876, the resignation of John A. Erwin as administrator of the estate of Lewis Tumlin, deceased, was allowed, and Frank P. Gray was appointed sole administrator and required to give a new bond and security, which being given, and Erwin having settled and accounted with Gray, his successor in administration, and filed his receipt as provided by law, it was ordered that John A. Erwin as administrator and his securities be discharged from " any and all liability for any mismanagement of said estate in the future, but not from any past liability; " and this settlement having been made and receipt filed and new bond given by Gray, and these successive acts approved, by order of June 12, 1876, the discharge of Erwin as administrator was made absolute.

From the judgment of the Ordinary an appeal was prosecuted to the Superior Court of Bartow County by three of the heirs, one of whom dismissed her appeal, and, upon trial had, the decision of the Court of Ordinary was affirmed by

the verdict of a jury, and time taken to perfect a bill of excep-
tions with the view of carrying the case to the Supreme Court,
which was not done.  Judgment appears not to have been
entered upon the verdict until pending this cause, when it was
so entered *nunc pro tunc* as of July term, 1876.  The Superior
Court thus determined the order of the Ordinary to have been
a proper one, and passed upon the question of jurisdiction.

Mrs. Ada S. Rice was duly served with Erwin's petition to  ·
be discharged, and citation to appear, but acquiesced in said
orders, and did not participate in the appeal therefrom, and
paid no further attention thereto, as she says in her petition
to amend of May 19, 1883.  Something over five years after-
wards she filed the bill in this case, and by amendment, some
two years after that, sought to hold the sureties on the bond
of Erwin and Gray for alleged maladministration of the latter
after the discharge of the former.

The Courts of Ordinary in Georgia are courts of original,
exclusive and general jurisdiction over decedents' estates and
the subject matter of these orders, and its judgments are no
more open to collateral attack than the judgments, decrees or
orders of any other court.  *Davie* v. *McDaniel*, 47 Georgia,
195; *Barnes* v. *Underwood*, 54 Georgia, 87; *Patterson* v.
*Lemon*, 50 Georgia, 231, 236; *Caujolle* v. *Ferrié*, 13 Wall. 465.

In *Jacobs* v. *Pou*, 18 Georgia, 346, it was held that "the
judgment of dismissal, by the Court of Ordinary, in such cases,
must operate as a discharge from all liability on the part of
the administrator, unless the same be impeached in that court,
for irregularity, or in the Superior Court, for fraud;" and in
*Bryan* v. *Walton*, 14 Georgia, 185, that the order appointing
an administrator, and in *Davie* v. *McDaniel*, 47 Georgia, 195,
and *McDade* v. *Burch*, 7 Georgia, 559, that an order for. sale
of lands, could not be collaterally attacked.

It is argued, however, that upon Erwin's resignation the
whole trust remained in Gray as survivor, and that the Ordi-
nary could not make a new appointment while the office was
not vacant, and § 2514 of the code is referred to, providing
that, upon the revocation of the letters of one administrator,
the trust remains in the hands of the other. . The well-known

case of *Griffith* v. *Frazier*, 8 Cranch, 9, is also cited as in point,
where letters of administration were held invalid, there being
a qualified executor capable of exercising the authority with
which he had been invested by the testator. But we think
the position taken is untenable. Under the code, upon the
death of an administrator, where there are more than one, the
right of administration survives, (§ 2499,) but the Ordinary may
apparently grant letters to others, (§ 2500 ;) and upon the revo-
cation of the letters of one administrator, where there are more
than one, the trust remains in the hands of the other, " and
with him, as to an administrator *de bonis non*, the removed
administrator must account," (§ 2514,) and his sureties are
" liable for his acts in connection with his trust up to the time
of his settlement with an administrator *de bonis non* or the
distributees of the estate " (§ 2512). When an administrator
resigns, and the resignation is allowed, he " shall be discharged
from his trust whenever he has fairly settled his accounts with
his successor and filed with the Ordinary the receipt in full of
such successor " (§ 2610). This section uses the singular num-
ber, but undoubtedly covers the case of more than one admin-
istrator. Paragraph 4 of § 4 of the code reads: " The sin-
gular or plural number shall each include the other, unless
expressly excluded." Code, 1882, p. 3.

Every administrator after the first is an administrator *de
bonis non* in fact, and it is not important it should so appear
of record. *Steen* v. *Bennett*, 24 Vermont, 303 ; *Grande* v.
*Herrerra*, 15 Texas, 533 ; *Moseley's Administrators* v. *Martin*,
37 Alabama, 219 ; *Ex parte Maxwell*, 37 Alabama, 362.

The Ordinary in accepting the resignation of Erwin treated
the case as he would have done if Erwin's letters had been
revoked by removal, and entered the orders in respect to Gray,
as successor of Erwin and Gray, and so administrator *de bonis
non*, and the new bond was accordingly conditioned to secure
the administration of the property which remained to be ad-
ministered. It is said by counsel that prior to 1854 there was
no provision in the laws of Georgia for the resignation of an
administrator, but it would seem that if an administrator had
resigned, and his resignation had been accepted, such action

on the part of the Ordinary would have been held equivalent to a revocation of his letters in the exercise of the power of removal. *Marsh* v. *The People*, 15 Illinois, 284.

As already stated, under the provisions of the Georgia code, where there are more than one administrator, and the letters of one are revoked, he must account to his co-administrator " *as to an administrator de bonis non,*" and as, in the instance of the resignation of a sole administrator he must account to his successor, so where there are more than one, he who resigns must account to his co-administrator, as such successor, who would in effect in such case be an administrator *de bonis non.*

Irrespectively of statutory regulation, an administrator *de bonis non* could only administer upon the assets remaining unadministered, in specie; but under these provisions the retiring administrator must account to his successor, and such accounting is required before discharge.

It is urged that, as Erwin applied only for his own discharge as administrator and not as surety for Gray, and as the sureties made no application in their own behalf, the effect of Erwin's discharge was not to release the sureties. By § 2509 of the code, the provisions where a surety on a guardian's bonds desires to be relieved as surety are made applicable to sureties on administrators' bonds; and by § 1817 a mode is provided for obtaining such relief on complaint made by the surety to the Ordinary, citation to the guardian, hearing, and order of discharge. And in *Dupont* v. *Mayo*, 56 Georgia, 304, 306, it was held that where there was no petition, citation, or hearing, an order accepting a new bond already executed by the guardian and declaring a former surety discharged, could not be sustained. But those sections apply to a different state of case, namely, where the sureties are asking to be relieved from liability, and not where the administrator himself is requesting leave to retire.

Erwin proceeded in conformity with the statute in such case made and provided, and under the orders of May 1 and June 12, 1876, ceased to be administrator, and was discharged from further liability as such, as were the sureties who had signed the bond of Erwin and Gray.

In *Justices, etc.* v. *Selman*, 6 Georgia, 432, the second section of an act of 1812 came under consideration, which read as follows : " Any executor, executrix, administrator, administratrix, or guardian, whose residence may be changed from one county to another, either by the creation of a new county, removal or otherwise, shall have the privilege of making the annual returns required of them by this act, to the Court of Ordinary of the county in which they reside, by having previously obtained a copy of all the records concerning the estates for which they are bound as executors, executrix, administrators, administratrix, or guardian, and having had the same recorded in the proper office in the county in which they then reside, and having given new bond and security, as the law directs, for the performance of their duty."

The court held, Lumpkin, J. delivering the opinion, " that the mere taking of a new bond does not, necessarily, release the old sureties, and especially when the new bond is taken by authority of law, for the purpose of strengthening the existing security," but that when the second or subsequent bond is given for a new and different undertaking, it operates, *ipso facto*, as a discharge of the prior parties and hence that when the provisions of the act are fully complied with the sureties on the first bond are discharged from all further liability on account of their principal.

We are of opinion that the court erred in rendering a decree against the sureties on the joint bond of Erwin and Gray for a *devastavit* committed after June 12, 1876.

Counsel for appellees contend that the sureties on this bond were not discharged because the service of the petition and citation on the three minor heirs, on Erwin's petition to resign, was insufficient, and guardians *ad litem* should have been appointed ; that the resignation, was not effectual as to them, and therefore not as to any of the others. This point was not passed upon by the special master or the Circuit Court, nor was a cross-bill filed on behalf of either of these defendants. They asked no relief as against complainants but affirmative relief against their co-defendants, these sureties, and under such circumstances cross-bills are necessary.

If, however, cross-bills were filed, as all the defendants are citizens of Georgia, and the complainants are citizens of Tennessee it is questionable whether the relief which the complainants could not obtain on their own case could be properly awarded by the Circuit Court, even though it could be successfully contended that these particular defendants were entitled to relief upon the ground suggested, and that their co-distributees could avail themselves of such conclusion, in respect to which we express no opinion, as these questions are not before us for decision in the present condition of the record.

It is assigned as error that the court decreed in accordance with the special master's report that the discharge of J. G. B. Erwin, H. C. Erwin and L. R. Ramsauer, because their names had been improperly signed to the joint bond of Erwin and Gray, did not discharge their co-sureties; but this was not urged on the argument. The master proceeded upon the ground that it was appellants' duty to see for themselves that the signatures of their co-sureties were binding upon them, if they intended to rely upon their being bound; and that it was the Ordinary's duty to see that valid signatures were made to the bond, but not to protect any one as surety, and that no fraud, concealment, or want of good faith could be charged on the Ordinary.

We do not regard the overruling of the exception, based as it is on the assumption of knowledge on the part of the Ordinary, and concealment misleading the other sureties, as erroneous. *Dair* v. *United States*, 16 Wall. 1 ; *Lewis* v. *Board of Commissioners*, 70 Georgia, 486; *Matthis* v. *Morgan*, 72 Georgia, 517; *Trustees* v. *Sheik*, 119 Illinois, 579.

It is further objected by appellants that the court erred in disallowing any commissions to Erwin and Gray, and particularly, the commissions of $3433.68 for distribution in kind. Upon a careful consideration of the proofs in the printed record and the various reports of the special master bearing upon this subject, we do not find such evidence of mismanagement on the part of Erwin and Gray as requires the forfeiture of all commissions, and, without entering upon any discussion of the details, we approve of the conclusions reached by the

master in his first report, and direct a modification of the decree accordingly, if, upon the return of the case to the Circuit Court, it is found, in view of our decision in respect to the discharge of Erwin and the sureties on the bond of Erwin and Gray, that Mrs. Rice is not concluded by the accounting at the time of such discharge.

*Decree reversed, and cause remanded with directions to proceed in conformity with this opinion.*