### ULMAN v. IAEGER'S ADM'R et al.

### ROSS v. ULMAN et al.

#### (Circuit Court, S. D. West Virginia. August 15, 1907.)

1. EQUITY—CROSS-BILL—SUIT BETWEEN TENANTS IN COMMON.
   While a cross-bill cannot be maintained in a suit after it has been settled, a tenant in common who has been impleaded in a suit between the co-tenants to establish the interest of each and obtain partition, and whose interest is admitted by the pleadings, cannot be deprived of the right to file a cross-bill therein at any time it may become necessary to protect his interest in the property by a settlement between his co-tenants.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 465.]

2. SAME—BRINGING IN NEW PARTIES BY CROSS-BILL.
   New parties may be brought in by a cross-bill which seeks affirmative relief, and is not merely defensive, when they are necessary to the granting of such relief.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 467.]

3. COURTS—JURISDICTION OF FEDERAL COURTS—ANCILLARY PROCEEDINGS.
   A resident of the District of Columbia, although not a citizen of a state within the constitutional provision giving the federal courts cognizance of suits between citizens of different states, may maintain a cross-bill in a suit in such a court for relief which is ancillary to that sought in the original suit; the citizenship of the parties in such case being immaterial.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 801.
   Supplementary and ancillary proceedings and relief, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.]

In Equity. On demurrers by Alfred J. Ulman, the Crozer Land Association, and the Pocahontas Coal & Coke Company to the cross-bill of Samuel Ross.

At August rules, 1889, in the circuit court of McDowell county, W. Va., Alfred J. Ulman filed his bill against William R. Iaeger, William G. W. Iaeger, Lindon Kent, S. C. Neal, Enoch Totten, Henry S. Parmalee, trustee, Charles Benjamin Wilkenson, Charles P. Jenney, trustee, and Charles C. Harrison, and at September rules following he filed an amended bill against the same parties and one Elias Adler, in which he alleges, substantially, that on the 24th day of December, 1872, the defendant William R. Iaeger was the owner of a tract of 150,000 acres of land, known as the "Robert Pollard survey," chiefly situate, lying, and being in the county of McDowell, W. Va.; that the said William R. Iaeger on that day sold and conveyed to him, as tenant in common, one undivided fourth thereof by a deed of record in said McDowell county; that the land was entered upon the assessor's books in the name of himself and the said W. R. Iaeger in the year 1873, and returned delinquent in their names for the nonpayment of taxes for that year, and, not having been redeemed, was sold and purchased by the state; that at the April term, 1881, of the circuit court of McDowell county, H. C. Auvil, commissioner of school lands for said county, filed his petition against said 150,000 acres, asking a sale thereof for the benefit of the school fund of the state; that prior to this time he, the said plaintiff, had conveyed by deed to Lindon Kent, S. C. Neal, and Enoch Totten one-fifth undivided of his one-fourth undivided interest in said land, and to said proceeding instituted he, the plaintiff, William R. Iaeger, Kent, Totten, and Neal were made parties, and such proceedings were had therein that something over 7,000 acres of said land were sold by said commissioner of school lands and these sales were confirmed; that pending said proceeding the said plaintiff and William R. Iaeger filed their joint petition in said proceeding, asking to redeem said land, and also their joint petition to remove the cause to the federal Circuit Court, and further took and obtained an appeal to the Supreme Court of Appeals from the orders entered; that the federal court remanded said matter to the state court, and the Supreme Court dismissed said cause; that on the 8th day of February, 1883, the said W. R. Iaeger conveyed the equity of redemption in his three-fourths undivided interest in said tract of 150,000 acres of land to the defendant William G. W. Iaeger, his father, and, after various other proceedings had, the school commissioner, H. C. Auvil, sold said 150,000 acre tract of land for the taxes due thereon, which sale at the May term, 1887, was confirmed, and subsequently said commissioner Auvil conveyed said land to W. G. W. Iaeger alone; that such sale and conveyance to Iaeger alone was made without the knowledge or consent of plaintiff, and had only been discovered by him, plaintiff, a short while before bringing this suit; that on the 23d day of April, 1888, the said defendant, W. G. W. Iaeger, by a deed, conveyed the whole of said tract of land to Henry S. Parmalee, in trust to secure Charles Benjamin Wilkenson $16,000, and on March 26, 1889, he made another conveyance of the whole of said tract to the defendant Charles P. Jenney, trustee, to secure Charles C. Harrison $60,000; that he, the plaintiff, purchased his one-fourth interest from the said William R. Iaeger originally through Elias Adler; that said William R. Iaeger on April 3, 1874, conveyed said one-fourth undivided interest to said Adler, who was simply a trustee for plaintiff, he, the plaintiff, having paid the purchase money, and that said Adler on July 30, 1881, conveyed to him said undivided fourth, and that by this purchase and this conveyance the said W. R. Iaeger was first, and the said W. G. W. Iaeger subsequently became, tenant in common with him in said tract of land, and that all proceedings had in the redemption of said land were conducted by the said Iaeger on behalf of themselves and as co-tenant and agents of plaintiff and by his authority; that the said W. G. W. Iaeger repeatedly importuned plaintiff to buy his said interest, and plaintiff had no knowledge of his purpose to take from the commissioner of school lands a conveyance of the whole title thereto.

The plaintiff then charges that the purchase of said land by W. G. W. Iaeger from Commissioner Auvil inured to the benefit of himself and the said Iaeger, and had the effect to restore and reinstate the title to the 150,000 acres in them; that the deed of trust executed thereon by W. G. W. Iaeger to secure Wilkenson the sum of $16,000 had been paid off, and that the deed of trust executed by him to secure Harrison $60,000 was a sham, fraud, and device; that said Harrison never loaned to said Iaeger said sum of $60,000, but only a small part thereof, and that both of said trusts were taken in fraud of plaintiff's rights, with full knowledge of such rights and interest; that the same constitute clouds upon his title and interest in the said tract of land.

And the prayer of the bills are, substantially, that these clouds be removed; that the purchase from Auvil, commissioner, by W. G. W. Iaeger, be held to have been made for the benefit of himself and the plaintiff; that partition of the land be made, and that an accounting be had between said W. G. W. Iaeger and plaintiff on account of taxes and expenses incurred in perfecting the title.

To this cause the defendant William G. W. Iaeger in 1889 appeared and filed his petition, alleging, among other things, that the suit was wholly between citizens of different states; that each adverse party was a citizen of a different state; that the plaintiff Alfred J. Ulman was a citizen of the state of Maryland; that he, W. G. W. Iaeger, was a citizen of the state of New York; that the defendants Charles P. Jenney and S. C. Neal were citizens of the state of Virginia, Elias Adler of Maryland, Parmalee, Wilkenson, and Harrison of Pennsylvania, Lindon, Kent, and Totten of the District of Columbia, but neither had any interest in the suit and were improperly made defendants therein; that W. R. Iaeger was a citizen of the state of West Virginia, but had not any interest in the suit and was improperly made a party thereto, or, at least, could be considered only a formal party, and upon this petition, against the protest of plaintiff, the cause was removed to this federal court. During the course of the proceeding—whether in the state court before removal or after is not very clear, for portions of the records in both courts have become lost or mislaid—W. G. W. Iaeger filed his answer and also a cross-bill. By this answer and cross-bill, it was made apparent that new and additional parties were required because of various interests held by them, and plaintiff was required by order of court to file an amended bill, making, among others, Samuel Ross a party defendant because it appeared that while Ulman, the plaintiff, pending a suit, had conveyed to Totten, Kent, and Neal one undivided fifth of his undivided fourth interest, and that Totten and Kent, by subsequent deed, had conveyed back to Iaeger, that, on the other hand, Neal had conveyed his interest amounting to one-eightieth share to said Ross on November 14, 1889. This amended bill was filed on June 10, 1900, and to it Ross filed his answer, setting up his title to said one-eightieth interest, and asking that in any partition which might be made his said interest should be fully recognized and protected.

On the 3d day of July, 1906, this defendant, Samuel Ross, filed his cross-bill, in which he alleges himself to be a citizen of the District of Columbia, against the said Alfred J. Ulman, a citizen of Maryland, the Kanawha Banking & Trust Company, administrator d. b. n. c. t. a. of W. G. W. Iaeger, deceased, a West Virginia corporation, W. R. Iaeger, Martha G. Iaeger, citizens of West Virginia, Edwin Meyers and Anna I. Meyers, citizens of Pennsylvania, Samuel A. Crozer, John P. Crozer, and Mary Crozer Page, trustees of the Crozer Land Association, citizens of Pennsylvania, the Crozer Land Association, a Pennsylvania corporation, the Bouvier-Iaeger Coal & Land Company, a West Virginia corporation, the Ulman-Iaeger Coal & Land Company, a West Virginia corporation, and the Pocahontas Coal & Coke Company, a West Virginia corporation. In this cross-bill Ross sets forth the purpose and objects of the original bill substantially as above set forth, and that by subsequent proceedings and compromises had in the original cause all questions had been substantially settled and all relief obtained, save and except the partition between Ulman and his alienees and Iaeger and his alienees; that Ulman pending the suit had granted to Totten, Kent, and Neal one-fourth of his (Ulman's) undivided fourth interest; that Totten and Kent had conveyed their interest

by later deeds back to Iaeger, while Neal conveyed his interest of one-eightieth to him (Ross) on November 14, 1889; that Ulman admitted his (Ross') interest; that a controversy over the boundary lines had arisen between the parties to the suit and the trustees of the Flat Top Coal & Land Association, which had resulted in an ejectment suit and a compromise thereof, by reason of which suit partition could not be proceeded with, and that, for this reason, complainant had waited until the determination and compromise thereof to file his cross-bill; that Ulman in 1894 conveyed to John P. Crozer his interest in parts of the land, as shown by his deed exhibited; that W. G. W. Iaeger and Ulman in October, 1901, had conveyed to the Pocahontas Coal & Coke Company all the lands lying south of Tug river, and Ulman, Iaeger's administrators, and devisees subsequently had conveyed all their remaining interest to the Pocahontas Coal & Coke Company, but that all these conveyances excepted all lands and interest previously conveyed by the grantors Ulman and Iaeger, and that the grantees purchased with full knowledge of the rights of said Ross; that Crozer and the Pocahontas Coal & Coke Company both held school tax titles to certain parts or parcels included in said original tract, and these school tax sales were void, because the Pocahontas and Crozer Companies were in possession as tenants in common with said Ross, and both were largely indebted to him for coal and timber cut from the lands so owned by them in common; that a receiver in the ejectment suit appointed at the instance of Iaeger and Ulman had collected $166,000 which he had distributed to these tenants in common of said Ross, who had received his share, as well as theirs, and had not accounted to him for his part thereof. Ross then alleges that he was at all times ready and willing to pay his portion of the tax on said lands, that he has offered to do so from time to time, but could never get any account thereof from his co-tenants Ulman and Iaeger.

The cross-bill then further alleges conveyances by Iaeger and Ulman to the Ulman-Iaeger Coal & Land Company and to the Bouvier-Iaeger Coal & Land Company of portions of said land, and the prayer of the cross-bill is that since the complicated claims of title had been compromised and settled, that Ross have his one-eightieth interest set off to him by partition, and that he have also an accounting as to the coal and timber taken pending the suit by his co-tenants and of his share of the royalties received by them from the receiver and for general relief. To this cross-bill the Crozer Land Association and its trustees and the Pocahontas Coal & Coke Company and the defendant Alfred J. Ulman filed their several demurrers, and it is these demurrers that I am now called upon to determine.

As stated, a very considerable portion of the original papers in the cause have been lost or mislaid, but the plaintiff, Ross, by order entered on March 7, 1907, was permitted to file in the case a new transcript of the record of the original cause, as found in the circuit court of McDowell county.

Payne & Payne, Bates & Warren, and J. J. Darlington, for Ross.

Brown, Jackson & Knight and Holt & Duncan, for Pocahontas Coal & Coke Co.

Rucker, Anderson, Strother & Hughes, for the Crozer Land Association and its trustees.

George E. Price, for Ulman.

DAYTON, District Judge (after stating the facts as above). The grounds assigned for these demurrers have been reduced and condensed with remarkable clearness and brevity by learned counsel in a brief filed for the Pocahontas Coal & Coke Company, into these four propositions: First, a cross-bill may not be predicated upon a settled controversy; second, a cross-bill may not be used for the purpose of introducing new and indispensable parties; third, an original bill may not be filed in the guise of a cross-bill; and, fourth, if the present bill is to be treated as an original bill, this court has no jurisdiction, be-

cause it is not a controversy between citizens of different states, but a controversy between a citizen of the District of Columbia and citizens of certain states.

Taking up and considering these propositions in their order, it may be admitted at once that the first, as an abstract proposition, is both sound and self-evident. There can be no cross-bill without an original bill. When the original controversy has been settled and dismissed, this dismissal carries with it the dismissal of the cross-bill, unless affirmative collateral relief be asked for, and the fact that an original bill has once existed, but does so no longer, can give no ground for filing a cross-bill which would be in effect only an original bill or bill of review. See Story's Eq. Pl. §§ 398, 399, and note. It is therefore beyond peradventure true that a cross-bill cannot be filed in a controversy that has been settled. But how and when is a controversy "settled"? After suit in equity has been instituted in which a number have independent interests and are parties, can two or three of these parties make a compromise in pais, not ratified nor confirmed by the court, and thereby "settle" the controversy, and destroy the rights of others? Apply this proposition to the facts in this case. Ross alleges in his cross-bill that he purchased and took valid title to the one-eightieth part of this 150,000 acres of land; that Ulman instituted the original suit to clear its title and partition it among the tenants holding the same in common; that he, Ross, was recognized as such tenant in common by the principal defendant, W. G. W. Iaeger, and, upon the allegations contained in his answer, this court required the plaintiff Ulman to amend his bills, and make him, Ross, as such co-tenant, a party, which he did, admitting his right. Under such circumstances, can Ulman and Iaeger, by any number of private arrangements, compromises, or settlements, dispose of the case or controversy so as to deprive Ross of his independent right to have his rights determined, his interest ascertained and set off to him, not at the will of the other parties, but by the court of equity before whose bar he has been brought for the purpose? To allow them to do so would be to make equity a minister of wrong and oppression, instead of justice and good conscience. To allow them to do so would enable a tenant in common to consummate in equity an ouster of his co-tenant in common, a thing which equity condemns and suffers to be accomplished in pais only under extraordinary circumstances. In a case decided by the Supreme Court of Appeals of this state so recently as May 22, 1907—Reed v. Bachman, 57 S. E. 769 (advance sheets August 10, 1907)—in a very full, clear, and able opinion Judge Brannon has reviewed the duties and obligations existing between co-tenants in common and the legal rules governing this relation. Among other things, he says:

"We have seen from the law quoted above that the possession of one joint tenant is the possession of another, and that no mere silent possession by one for any length of time will alone divest the right of a brother tenant. That brother tenant may be in any part of this earth distant from the land, and he may repose in silence and confidence that his fellow's occupation will not destroy his right. He may assume this and sleep in composure. It is for the occupying tenant to let him know that he claims in hostility. The burden of showing this rests on him. Diligence is not required of the absent brother. Where there is a deed procured by fraud or mistake, for instance, diligence

after notice is required, and suit must soon be brought; but not so as to joint tenants. That brother is put by the law under no duty of inquiry or diligence. If he chooses to let a co-tenant retain possession and take the profits, he can do so. He is guilty of no negligence if he does not inquire. He may sleep in restful confidence of the good faith of his co-tenant under the law of co-tenancy. A co-tenant cannot lose his right by mere silence. That does not show acquiescence in loss of his estate."

If this be true, how much stronger must become the security of such tenant when his co-tenants have impleaded him in a court of equity, admitting his right and asking that his interest be ascertained in severalty, and how impossible after thus impleading him is it for them, by private agreements, conveyances, compromises, and "settlements" between themselves, to wrest this security, this vested right, from him. Again, it is the very touchstone of equity jurisprudence that, having taken jurisdiction, it will administer plenary justice to all parties, who may have interests in the subject-matter according to their right. No controversy is ever "settled" or ended in that court until all such rights and interests are fixed and determined by its decree, and this is true regardless of the time and delay involved in its doing so. A court of equity recognizes neither laches nor limitation in its own administration. I am therefore constrained to hold this first ground of demurrer untenable.

The second proposition, that a cross-bill may not be used for the purpose of introducing new and indispensable parties, I am not so ready to concede to be sound as an abstract principle of equity practice. It is based upon the ruling in Shields v. Barrow, 17 How. 130, 15 L. Ed. 158. This ruling has been much discussed by the courts, and quite a conflict has arisen as to it. In Brandon v. Prime, 14 Blatchf. 371, Fed. Cas. No. 1810, it is said:

"Opposed to all this, there is the remark of Mr. Justice Curtis in Shields v. Barrow, 17 How. 130, 15 L. Ed. 158, and the reason given by him in support of it, to the effect that new parties cannot in any case properly be added by cross-bill, without citing any authority for it, and books and cases that have followed that remark without citing any other authority. That precise question was not involved in that case, but the mere dictum of such a judge of such a court would ordinarily be followed, specially by lower courts. An examination of his reasoning shows that he made the suggestion without much examination probably, and his reasoning does not cover the whole ground as to all classes of cases. The modes of procedure he suggests would probably be ample in all cases of cross-bills brought for discovery in aid of a defense merely to the original bill, but not in cases of those brought for relief as well as defense, where new parties would be necessary to the relief sought."

In McComb v. C., St. L. & N. O. R. Co. (C. C.) 7 Fed. 426–427, it is held:

"It is proper for the defendant in a bill in equity, who files a cross-bill, to make defendants of parties not parties to the original bill, where they are necessary to complete relief"—citing Brandon v. Prime, supra.

In Mercantile Trust Co. v. A. & P. R. Co. (C. C.) 70 Fed. 518, the proposition is discussed fully, the remark of Mr. Justice Curtis is determined to be mere dictum, applicable only to cross-bills seeking discovery and not affirmative relief, and it is held that new parties can be introduced in cross-bills.

Hogg, in his able work of Equity Procedure (volume 1, p. 262, § 198), says:

"It is settled that, where a cross-bill is filed as a mere defense to the original bill, persons not parties to the original bill cannot be made parties to the cross-bill; but, if the cross-bill seeks affirmative relief, and shows that persons not parties to the original are necessary parties to the cross-bill, and the ends of justice require it, such persons should be made parties to the cross-bill."

This statement of the law is fully sustained, so far as the practice in West Virginia is concerned, by the case of Kanawha Lodge v. Swann, 37 W. Va. 176, 16 S. E. 462, where Judge Lucas reviews the two prior cases, apparently to the contrary, of McMullen v. Egan, 21 W. Va. 250, and W. Va., O. & O. L. Co. v. Vinal, 14 W. Va. 682, and overrules them in effect. On the contrary in Virginia, Derbyshire v. Jones, 94 Va. 140, 26 S. E. 416, would seem to hold to the opposite view, though not decisive.

A careful examination of these and other authorities cited by Mr. Hogg and in 5 Rose's Notes, p. 450, leads me to conclude that the second proposition of demurrants, that new parties cannot be made in any case, by cross-bills, is not sound, but that Mr. Hogg has correctly stated the true rule in the paragraph above cited.

But, if this were not so, in this case the proposition would not be tenable for another reason. The new parties introduced by this cross-bill are merely pendente lite vendees of the parties to the original bill. They are not indispensable parties. They not only purchased pending the suit, but also after formal notice of lis pendens had been entered of record in McDowell county. Under such circumstances, they can have no other or different rights than their vendors the original parties had, and it was not incumbent on Ross to make them parties at all to his cross-bill. If, therefore, he has brought them in and enabled them to have opportunity to defend independent of their vendors, they cannot complain.

In view of what I have already said, it is not necessary for me to consider the third proposition, that "an original bill may not be filed in the guise of a cross-bill," further than to say that, while absolutely sound as an abstract proposition, it is nevertheless wholly inapplicable to the facts and conditions existing in this case as set forth in the cross-bill. Counsel say:

"The litigation was compromised and settled, but the cause was permitted to sleep upon the docket for many years."

Well, be it so, who compromised and who "settled," and with whom and who permitted the cause to sleep? Was it not Ross' co-tenants who compromised and settled out of court, with themselves alone, and who let the cause sleep? And do they want equity to give them credit for their own acts in this particular, to the injury and deprivation of the rights of their co-tenant? Judge Brannon in Reed v. Bachman, supra, has so clearly shown that laches and negligence cannot be relied on in any event between tenants in common, and has so fully cited the authorities that I deem it unnecessary to pursue the question further.

We now come to the consideration of the fourth proposition, to the effect that, if the present bill is to be treated as an original bill, this court has no jurisdiction, because it is not a controversy between citizens of different states, but a controversy between a citizen of the District of Columbia and citizens of certain states. This must be admitted without a moment's hesitation. It is well settled that a resident of the District of Columbia is not "a citizen of a state" within the constitutional provision giving federal courts cognizance of controversies between citizens of different states. Hooe v. Jamieson, 166 U. S. 395, 17 Sup. Ct. 596, 41 L. Ed. 1049. While this is true, it is equally well settled that in suits not original, but ancillary, to litigation already pending in a Circuit Court of the United States, the citizenship of the parties is wholly immaterial. Freeman v. Howe, 24 How. 460, 16 L. Ed. 749; Railroad Co. v. Chamberlain, 6 Wall. 748, 18 L. Ed. 859; Railroad Co. v. Bank, 134 U. S. 276, 10 Sup. Ct. 550, 33 L. Ed. 900; First Nat. Bank v. Salem Mills Co. (C. C.) 31 Fed. 580. These cases hold necessarily a cross-bill to be such an ancillary proceeding. It is therefore clear that this fourth proposition, while absolutely sound in the abstract, can have no application in this case, for the simple reason that Ross' cross-bill can under no view of the case be considered an original bill, but, on the contrary, nothing more than an ancillary one, seeking enforcement of the equitable rights which he alleges are set forth and admitted in the bills filed in the original cause. There can be no question now as to this court's jurisdiction of the original controversy. It was brought in the state court by Ulman against not Ross, but his vendor, Neal, who by Iaeger's petition to remove was alleged to be a citizen of Virginia, and this allegation has never been denied. He having, after suit brought, conveyed his interest to Ross, this court, at the instance of Iaeger and by reason of the allegations of his answer, required Ulman to amend and make Ross a party. Ross filed his answer promptly, and asked that, in any partition that should be made, his one-eightieth share should be allotted to him. He now files this cross-bill to enforce this right, alleging the delay to have been occasioned by the pendency of litigation to settle title, which at last had ended. These allegations I must, upon demurrer, hold to be true, and, so regarding them, I cannot question this court's jurisdiction of the original cause nor Ross' right, regardless of his citizenship, to file this cross-bill; and the demurrer thereto must be overruled.