## BEESLEY v. WM. A. NICHOLSON CO., Inc., et al.

No. 19684. Opinion Filed April 28, 1931.

Bowling & Farmer and S. A. Denyer, for plaintiff in error.

Mac Q. Williamson, Carroll J. Moody, and Yerker E. Taylor, for defendants in error.

RILEY, J.  This is an action upon a negotiable promissory note, and to foreclose a mortgage on real estate given to secure the same.

The plaintiff in error, plaintiff below, sues as a purchaser in due course for value before maturity.  The note was for $3,000, and signed by Wm. A. Nicholson Company, with Lawrence W. Nicholson as payee.  It was indorsed by William A. Nicholson, Allie E. Nicholson, and Lawrence W. Nicholson, with the further indorsement thereon signed by Lawrence W. Nicholson showing the interest paid  to date of maturity, which was two years after date.

The defense of William A. Nicholson Company, W. A. Nicholson, and Allie E. Nicholson is a defect in the title of the person from whom plaintiff purchased the note, namely, E. W. Hardin Company, a corporation, or W. C. Beesley, a brother of the plaintiff; and a further defense of payment to Lawrence W. Nicholson before maturity and while the note was in his hands.

Lawrence W. Nicholson, by separate answer, pleaded, in substance, that he executed a  note in the sum of $2,500 to E. W. Hardin Company, at the request of E. W. Hardin and W. C. Beesley, the president and secretary, respectively, of a corporation known as E. W. Hardin Company.  That said officers of said company requested him to execute said note and put the same, together with the $3,000 note sued upon, up with the State Insurance Commissioner in order that the E. W. Hardin Company could make a sufficient showing before said official of assets necessary for it to engage in business in Oklahoma.  That the note

sued upon was not to be transferred or assigned, but was to be used only for the specific purpose above stated, and that the same was to be re-assigned or returned to him as soon as they could arrange to substitute other sufficient security; that said note was thereafter transferred by said company to W. C. Beesley, who was its secretary, and was by him transferred to plaintiff, who is W. C. Beesley's brother, without consideration, and in connivance with plaintiff and said company, and for the purpose of defrauding said defendant; that there was no consideration for the $2,500 note, and no consideration for the transfer of the $3,000 note sued upon, and he was the owner of said $3,000 note, and was entitled to judgment thereon, for which he prayed.

Plaintiff replied by general denial.

Upon the issues thus joined the cause was tried to a jury, resulting in a verdict and judgment for defendants, from which plaintiff appeals.

There are six assignments of error presented under four propositions.

It is first contended that the court erred in refusing to instruct the jury to return a verdict for plaintiff; in overruling plaintiff's demurrer to defendants' evidence; and in denying plaintiff's motion for a judgment notwithstanding the verdict.

We first consider the question of the correctness of the ruling on the demurrer to defendants' evidence. This depends, of course, upon the state of the evidence at the close of defendants' case in chief.

In the class of cases here under consideration the plaintiff is deemed prima facie to be a holder in due course. But if defendant shows that the title of any person who negotiated a note is defective, the burden is then upon the plaintiff to prove that he, or some person under whom he claims, acquired the title in due course. Section 7729, C. O. S. 1921.

This does not mean that the defendant must prove to a certainty that some person who negotiated the note held the same by defective title, but when he introduces evidence reasonably tending to show such state of facts, then the onus or burden is shifted to the plaintiff to show that the note had been acquired by him in good faith, for value, in the usual course of business and before maturity. Moore v. First Nat. Bk. of Iowa City, 30 Okla. 623, 121 Pac. 626.

The record, as we view it, contains abundant evidence tending to show, and from which it might reasonably be inferred, that

the title of the E. W. Harden Company, the United Fire Insurance Exchange, and W. C. Beesley, and each of them, to the note in question was defective. To set out such evidence at length would require too much space. Briefly and in substance, the record shows that at the time the note was obtained from Lawrence W. Nicholson, he was a young man just past 21 years of age. Apparently he was an Indian, and had owned some land near Caddo, which he had sold upon obtaining his majority. He had thereby secured $3,000, which he had loaned to the Wm. A. Nicholson Company, a corporation, owned or controlled by his uncle, William A. Nicholson. The $3,000 note in question and the mortgage securing the same was obtained by him in this way. Shortly thereafter he went to Oklahoma City, and there met E. W. Hardin and W. C. Beesley, who were organizing and endeavoring to finance an insurance company known as the United Fire Insurance Exchange. They learned of his ownership of the note and mortgage and very promptly and generously offered him employment under terms which would require him, or by which he at least agreed, to buy some stock in the insurance company. They were to put him to work soliciting business for the company and appointing agents in such territory as he might select in Oklahoma, receiving as his compensation certain commissions on the business brought to the company by him, and through the agents appointed by him. The insurance company, however, was to be of such magnitude, or for some other undisclosed reasons, that it was necessary to have another corporation organized to act as attorney in fact for it. This was the E. W. Hardin Company, which was described by Hardin as a reciprocal company and had no assets, but whatever assets that came into its hands, by reason of the reciprocal relation between the two companies, automatically became the property of the insurance exchange. Young Lawrence agreed to purchase the stock and gave his demand note payable to the E. W. Hardin Company in the sum of $2,500. This note, he testified, was to be paid by commissions earned by him and the agents appointed by him. The company was to advance him not to exceed $150 per month expenses, which was to be deducted from the commissions earned by him. But when the stock certificate was issued it was for stock in the Hardin Company, which, as stated, was not supposed to have any assets, and not stock in the insurance company. It was explained to him that before the company could start soliciting insurance it would be necessary to put up

certain securities with the State Insurance Commissioner, and they requested him to put up the $3,000 note and mortgage for this purpose, temporarily, the same to be returned to him as soon as other suitable securities could be substituted therefor. He testified that it was agreed that this note and mortgage should not be used for any other purpose; was not to be sold, assigned, nor hypothecated. It was accordingly indorsed by him and turned over to Harden and Beesley, or one of them. Two days after it was delivered it was deposited with a bank in Oklahoma City as collateral security for money borrowed by the E. W. Hardin Company. Thereafter young Nicholson went to work for the company and secured applications for some $60,000 in fire insurance for the company. This insurance was not written by the company, the explanation being that the company had not yet made sufficient connections to enable it to write the insurance. Some $325 was advanced to young Nicholson for expenses, but with no insurance premiums coming in, the Hardin Company soon became unable to advance further expense money, and after several months delay Lawrence was compelled to seek other employment. When he requested the return of the $3,000 note and mortgage, it was explained to him that it could not be returned at that time for the reason that it was deposited with the State Insurance Commissioner as assets of the insurance company, while as a matter of fact the note and mortgage were resting securely in the vaults of the bank as collateral security for money borrowed by the Hardin Company, where it remained until the 24th day of October, 1926, at which time there still remained $400 owing the bank by the Hardin Company, and at which time the note was transferred by the Hardin Company to W. C. Beesley, and by him in turn transferred to the plaintiff.

As we view the record, the evidence tends strongly to show that the possession of the $3,000 note and mortgage was obtained from young Nicholson by means not altogether honest and in good faith, if not by actual fraud, and wholly without consideration. In short, the evidence strongly suggests methods of the ordinary swindler or confidence man; that is the old familiar method of offering the verdant possessor of money or property, employment under terms and promises sufficiently glowing to induce him to part with his money without such chance of its return.

With this state of the record, certainly there was no error in overruling the de-

murrer to defendants' evidence. The burden was thus shifted to plaintiff to show that he acquired the note in good faith and with no notice of the defect in title. The correctness of the ruling on the motion of plaintiff for a directed verdict depends upon whether or not plaintiff met this burden to the extent that the evidence introduced by him on that point was such that men of ordinary intelligence could draw but one conclusion therefrom, and that, that he did so acquire the note and mortgage. If his evidence was of such nature, then it was error to refuse the request for a directed verdict, otherwise it was not error.

In Messman v. Wilt, 91 Okla. 240, 217 Pac. 412, it was held:

"Even though the defendant offers no evidence on rebuttal to disclose that the plaintiff was not a bona fide holder of the note in due course, but where defendant has denied said fact, and the evidence introduced on the part of the plaintiff to prove such fact was of such nature that men of ordinary intelligence might draw different conclusions therefrom, it is not error for the court to refuse to instruct a verdict for the plaintiff. Record examined, and held, the court did not err in refusing to direct a verdict for the plaintiff."

A careful examination of the record will disclose that the evidence of plaintiff, by which he sought to show his good faith in taking the note, is clearly such that men of ordinary intelligence might draw different conclusions therefrom. His explanation of how and under what circumstances he became the purchaser of the note from his brother is evasive and unsatisfactory.

In Moore v. First Nat. Bk. of Iowa City, supra, it was held:

"The court may direct a verdict for plaintiff or defendant, as the one or the other may be proper, only where the evidence is undisputed or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict in opposition to it."

And:

"Where the only testimony upon a material issue is that of an interested party and such testimony is inconsistent or contradictory and the replies to questions are evasive and unreasonable, and where the jury may draw inferences therefrom unfavorable to plaintiff or defendant, as the case may be, the court should never direct a verdict, but should submit to the jury all controverted questions of fact under proper instructions."

With the evidence in this state, disregarding the question of payment and the evi-

dence in support of defendants' contention on this point, we cannot say as a matter of law that it was error to deny the motion for a directed verdict.

Under the rule announced in Hanna v. Gregg, 92 Okla. 34, 217 Pac. 434, there was no error in denying the motion of plaintiff for a judgment notwithstanding the verdict, for it is clear that he was not entitled to judgment upon the pleadings and there were no special findings contrary to the general verdict.

What we have said renders it unnecessary to discuss the second proposition submitted by plaintiff in error, for the reason that it presents one of the questions heretofore discussed, namely, the sufficiency of the evidence to present a question of fact to the jury as to the alleged defect or infirmity in the title of the insurance company, the Hardin Company, and W. C. Beesley, or either of them, to the note in question.

The third proposition goes to the admission of certain evidence claimed to be incompetent. It is first asserted that the testimony of Lawrence W. Nicholson as to the failure of the insurance company to write any of the insurance procured by him, and the statement that the reasons for not writing same were that the insurance company was unable to write the insurance because it did not have any connection at that time, that is, that the insurance company did not, or was not supposed to, write the insurance itself, but had to rewrite it in other companies, and that it never made its connection with other companies so as to enable it to accept the applications, was incompetent. This evidence had no bearing upon the question of the good faith or lack of the same of plaintiff in acquiring the note sued upon and was not competent for that purpose. But it was not offered on that point or in opposition to the evidence offered by plaintiff on that question, but was offered, and we think properly admitted, on the question of defect of title of the insurance exchange, the E. W. Hardin Company, and W. C. Beesley. The other evidence objected to was of the same witness to the effect that Wm. A. Nicholson Company had paid to him the full amount of the $3,000 note. The objection to this evidence was: "That matter was not pleaded and does not prove or disprove any of the issues." In this, plaintiff is mistaken. The defendants Wm. A. Nicholson Company, Wm. A. Nicholson, and Allie E. Nicholson specifically pleaded payment of the note to Lawrence W. Nicholson before maturity and while the note was held by him. These allegations are denied by plaintiff in his reply. It is urged, however, that it was incompetent for the reason that Wm. A. Nicholson, who did the paying, knew when he made the payments to Lawrence W. Nicholson, the payee of the note did not have possession of the same, in that he admitted that he knew where the note was when he made the payments. But this must be taken in connection with his other testimony to the effect that he knew (or thought he knew) that the note had been placed with the State Insurance Commissioner under the arrangements testified to by Lawrence W. Nicholson. When taken in this connection, we think there was no error in admitting the evidence.

The fourth and last proposition is as to alleged error in giving certain instructions.

No contention is made that the instructions given did not correctly state the law. The only contention is that there was no evidence upon which to base the instructions objected to.

We have shown that there was some evidence tending to support the allegations of the answering defendants, and that the evidence of plaintiff as to his acquisition of the note sued upon was such as to leave the question of his good faith in the matter one of fact for the jury. The instructions as a whole fairly presented the law governing the case. We conclude that there was no error therein.

The judgment is affirmed.

LESTER, C. J., CLARK, V. C. J., and CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.