### QUEENAN v. MAYS et al.
### BOARD OF COUNTY COM'RS OF CREEK COUNTY, OKL. et al. v. MAYS et al.
### Nos. 1423, 1424.

Circuit Court of Appeals, Tenth Circuit.
May 28, 1937.

George B. Schwabe and Frank Settle, both of Tulsa, Okl., for receiver, and First Nat. Bank of Bristow, Okl.

L. O. Lytle, of Sapulpa, Okl. (John R. Miller, of Sapulpa, Okl., on the brief), for I. D. Mays.

W. V. Pryor, of Sapulpa, Okl. (Everett S. Collins and Thomas S. Harris, both of Sapulpa, Okl., on the brief), for the Board of County Com'rs and Ghayn Ray.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge (after stating the facts as above).

Appeal of the Receiver—No. 1423.

The administrator has moved to dismiss this appeal because the decree ran against the bank as well as the receiver, the bank did not join in the petition for appeal and there was no summons and severance. The bank is hopelessly insolvent; the controversy is solely over distribution of assets in the hands of the receiver; the bank is a formal party only; the judgment against it was a meaningless gesture; throughout the proceedings the same counsel have represented both the bank and the receiver. The omission of the bank's name in the petition for appeal is a matter of no moment; to dismiss this appeal on account of such an insubstantial technicality would result in an injustice to the general creditors. The Sixth Circuit, speaking through Judge Taft, declined to dismiss an appeal under similar circumstances. Mercantile Trust Co. v. Kanawha & O. Ry. Co. (C.C.A.) 58 F. 6, 11, 12. So did the Fifth Circuit. Galveston, H. & N. Ry. Co. v. House (C.C.A.) 102 F. 112. The motion to dismiss will be denied.

The receiver asserts that the bank acquired title to the Mays bonds through a purchase thereof from O. D. Groom.

It is clear that the bonds belonged to Mays and that he had not authorized O. D. Groom to make disposition thereof.

■ The burden was on the bank to establish that it acquired title to the bonds for value without knowledge of any defect in Groom's title or want of authority in him. O.S.1931, § 11358 (48 Okl.St.Ann. § 129); Beesley v. Wm. A. Nicholson Co., 148 Okl. 270, 298 P. 607, 608; First National Bank & T. Co. v. Heilman (C.C.A.10) 62 F.(2d) 157, 158.

■ It was stipulated that the records of the bank show the bank purchased the Mays bonds from O. D. Groom and paid him therefor. It was not stipulated that such purchase and payment in fact occurred. Nor are the circumstances of the claimed purchase shown. Under the facts as stipulated we are of the opinion the records of the bank were not sufficient to establish the substantive facts of purchase and payment.

■ But if we assume that O. D. Groom in fact undertook to sell the Mays bonds to the bank, we are of the opinion the bank did not acquire good title as against Mays.

If in making the sale, O. D. Groom dealt with other officers of the bank the circumstances were such as to put them on inquiry. The bonds were not in the possession of O. D. Groom, but were on deposit in the bank for safekeeping and its receipts were outstanding therefor. O. D. Groom was heavily indebted to Mays. The amount of the bonds was substantial. W. W. Groom, president of the bank, knew the bonds had been deposited for safekeeping. Ordinary prudence would have required a release of the bailment from Mays. The fact that Mays had not sold the bonds to O. D. Groom or authorized him to sell the bonds could have been ascertained on slight inquiry.

On the other hand if O. D. Groom acted as the sole representative of the bank in the transaction then the bank cannot retain the fruits of Groom's act, the bonds, without being charged with Groom's knowledge.

■ It is a well settled general rule that notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, his principal. Certain qualifications of the general rule are equally well settled. A principal is not chargeable with or bound by notice to, or knowledge of, an agent as to matters involved in a transaction in which the agent deals with the principal or another agent of the principal as, or on account of, an adverse party. The exception applies when the agent is engaged in prosecuting some fraudulent or illegal enterprise, the success of which would be impaired or defeated by the disclosure to his principal of the notice or knowledge sought to be imputed. A qualification of the exception is recognized where the agent, although engaged in perpetrating an independent fraudulent act on his own account, is the sole representative of the principal and the principal, with knowledge of the facts, retains the fruits of the transaction. In such a case the principal is impaled on the horns of a dilemma. If he disclaims the agent's act as unauthorized, he has no grounds to retain the fruits thereof; on the other hand, if he retains the fruits of the agent's act, after knowledge of the facts, he must in fairness be charged with the agent's knowledge. The reason for the qualification is stated in Mechem on Agency (2d Ed.) p. 1412, as follows:

"The real ground upon which the situation rests is, * * * that where the agent is the sole representative of the corporation, the corporation can not claim anything except through him and that therefore if it claims through him, after notice of the facts, it must accept his agency with its attendant notice."

See Maryland Casualty Co. v. Queenan, Receiver (C.C.A.10) 89 F.(2d) 155, decided March 24, 1937, and cases there cited.

We conclude first the evidence failed to establish a sale to the bank and second if any such sale was made the bank took the bonds charged with the defect in Groom's title or with his want of authority to act for Mays.

■ It follows that the bank became liable to Mays for the value of the bonds on March 25, 1927, when it converted them by undertaking to pledge them to the county to secure the county's deposit.

■ The receiver claims that he is relieved of this clear obligation by the failure of Mays to file his claim within 90 days, and by the equitable doctrine of laches. Neither claim is well-founded.

The practice of requiring claims to be filed within a reasonable time, of which notice is given by publication, is a convenient one calculated to facilitate the speedy administration of insolvent estates. But failure to file a claim within the time specified in the notice is not in itself a bar. Section 193, 12 U.S.C.A., simply directs the Comptroller to notify creditors, by advertising for three months, to present their

claims. It does not fix the time within which claims may be presented. Section 194 directs the Comptroller, from time to time, to "make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction." The statute therefore is not one of limitations. Nor does the notice given so recite; it simply notifies creditors to present their claims to the receiver within 90 days "or they may be disallowed." But both by statute, 12 U.S.C.A. § 194, and by decision, Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 401, 20 L.Ed. 840, and Schulenberg v. Norton (C.C.A.8) 49 F.(2d) 578, 580, claims may be adjudicated without proof to the receiver. Failure to file the claim within the time fixed by the notice or to establish the claim before the receiver, does not bar the claim. Schulenberg v. Norton, supra. In this case, there are other reasons. When the claim was filed, a few days late, no objection was made on this ground, and the receiver should not now be heard to raise this highly technical objection. The receiver knew the essential facts the day after he was appointed and advised the Comptroller thereof. No prejudice resulted to any one.

[redacted] The defense of laches is similarly barren of merit. When the formal claim was filed, the receiver suggested postponement of action on the claims until the state court suit was determined. Mays acquiesced. Obviously it was to the advantage of the receiver to postpone consideration until the outcome of that suit. If Mays had recovered his bonds from the county there would have been no claim against the receiver. When that case was decided, Mays acted promptly. The receiver suggested and invited the delay, for his own benefit. This court in Merritt Oil Corporation v. Young, 43 F.(2d) 27, 32, held that where the defendant seeks the delay, he may not interpose it as a bar to recovery. And in Spiller v. St. Louis & S. F. R. Co. (C.C.A.) 14 F.(2d) 284, 288, the Eighth Circuit held that one may not set up laches as a defense if he has been responsible for or contributed to the delay. Nor did the delay result in a prejudicial change in the receiver's position. See O'Brien v. Wheelock, 184 U.S. 450, 493, 22 S.Ct. 354, 46 L.Ed. 636. The argument that Mays has lost his rights because he agreed to the requested delay does not appeal to the conscience of a court of equity, and laches is an equitable doctrine. Nor, despite the argument to the contrary, has any creditor suffered by the delay. The receiver paid out all the funds in his hands, except a pittance reserved for undetermined claims, notwithstanding the pending claim of Mays. The delay will be prejudicial to Mays if there is not enough left to satisfy his claim, but it has not prejudiced other creditors who have received in dividends, practically all the assets of the bank.

[redacted] The receiver argues that since the county, a bona fide purchaser for value of negotiable paper, defeated Mays in the state court, that judgment bars Mays from recovering from the bank. The argument carries its own refutation. A judgment in favor of an innocent purchaser of negotiable paper from a thief does not bar an action by the owner against the thief.

[redacted] Mays therefore has a valid claim against the receiver for the value of the bonds at the date of their conversion, with interest. Whether it is a preferred claim involves very different considerations. Before one claiming a preference over general creditors in the distribution of the assets of an insolvent national bank may prevail, several things must appear. First, it must be shown that the transaction giving rise to the claim did not result in the relationship of debtor and creditor, but that the bank assumed an obligation to preserve intact the funds or things deposited and account to the claimant therefor. The record here disclosed that the bank held these bonds under a special agreement to return them on request; the relationship was not that of debtor and creditor. Second, the proceeds arising from breach of the agreement must be traced to some identifiable thing of value which came into the hands of the receiver; it is not sufficient to prove that the trust property or its proceeds went into the general assets and augmented the amount and value thereof which came into the hands of the receiver. If such proceeds are traced into a fund commingled with like funds of the bank, then it will be presumed that the bank expended its own funds before resorting to the trust funds, and the trust will attach to so much of the fund as remains. The authorities are legion. See Empire State Surety Co. v. Carroll County (C.C.A.) 194 F. 593, 604, a leading case in the Eighth Circuit; Bartholf v. Millett (C.C.A.8) 22 F.(2d) 538; Dudley

v. Richards (C.C.A.8) 18 F.(2d) 876; Kershaw v. Jenkins (C.C.A.10) 71 F.(2d) 647; Blumenfeld v. Union Nat. Bank (C.C.A.10) 38 F.(2d) 455; Marchant v. Summers (C.C.A.4) 79 F.(2d) 877; Jennings v. United States F. & G. Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869, 99 A.L.R. 1248; Old Company's Lehigh v. Meeker, 294 U.S. 227, 55 S.Ct. 392, 79 L.Ed. 876.

■ The decree awarded Mays an unconditional preference. This was error.

The $4,500.00 of bonds returned by the county are identifiable as those which the bank in fact owned, and Mays was not entitled to a preference over other creditors as to those bonds.

Neither was Mays entitled to a preferred claim on account of the use of the proceeds derived from the sale of the Mays bonds and coupons attached, to liquidate in part the claim of the county. This transaction did not augment the assets in the hands of the receiver or decrease the liabilities of his trust. It simply discharged a liability to the county and created a liability in an equal amount to Mays. Hoffman, Receiver of First National Bank of Boswell, v. Rauch, 57 S.Ct. 446, 81 L.Ed. ——, decided March 1, 1937.

The administrator is entitled to a preferred claim as to the $702.39 overage paid by the county to the receiver as that was derived directly from the sale of the Mays bonds and came into, and augmented the assets in the hands of the receiver.

Furthermore, for reasons we shall presently state, when the bank became liable to Mays for the conversion of his bonds, there arose in the bank a cause of action over against the county. That cause of action came into the hands of the receiver and augmented the assets in his hands. It is the cause of action he here asserts with respect to the pledge of the Mays bonds. The receiver seeks not the bonds (they having been converted and sold by the county) but their equivalent. What he recovers will take the place of the bonds in the hands of the bank. If the county without suit had returned the bonds or their proceeds to the receiver, Mays clearly would have been entitled thereto on the familiar ground that a cestui may recover trust funds as long as they may be traced. The fact that the value of the bonds is recovered through litigation makes no difference. It follows that the original trust fund, the bonds, may be traced directly into the cause of action

which came to the receiver and into any recovery he may make and receive thereon.

We conclude the administrator of Mays is entitled to a preference only to the $702.39 and to the extent of the recovery, if any, by the receiver from the county on account of the pledge of the Mays bonds.

Appeal of the County—No. 1424.

The county sold all of the Mays bonds and $11,000.00 of the bank's bonds, with interest coupons attached, for $63,526.75. It disbursed $67.36 for expenses of sale and applied $62,757.00 to the payment of its $54,000.00 deposit with three per cent interest; it returned to the receiver $4,500.00 in bonds and $702.39 in cash.

The receiver asked judgment against the county outright for the value of $11,000.00 of bonds belonging to the bank, and for judgment for the value of $39,000.00 of Mays' bonds in event Mays should be adjudged to have a claim against the receiver. The trial court entered judgment against the county for the $62,757.00 retained by the county, less a credit for 35 per cent of $54,000.00, representing dividends theretofore declared to general depositors,—a net judgment of $43,857.00.

■ The only defenses pleaded by the county are the adjudication in the state court action brought by Mays, and the statute of limitations. The statute of limitations is not referred to in the specifications of error, the briefs, or the argument, and is therefore abandoned. Two defenses not pleaded are argued, to wit, the receipt given by the county treasurer to the receiver, and that the bank could lawfully pledge the Mays bonds since they were not assets of the bank.

■ The receiver executed no receipt or release. The county sent him a statement of the disposition of the proceeds of the bonds, together with the county treasurer's receipt for the deposit. The receiver endorsed his approval thereon, but gave no receipt. Moreover, a release should be pleaded. The opposite party is entitled to notice of such a defense and to explore the attendant circumstances.

■ $11,000.00 of the bonds for which recovery was allowed belonged to the bank; they were in no wise involved in the state court suit of Mays against the county. They were pledged before the Act of June 25, 1930 (46 Stat. 809 [12 U.S.C.A. § 90]);

the decision of Marion v. Sneeden, 291 U. S. 262, 54 S.Ct. 421, 78 L.Ed. 787, is directly in point and supports the judgment below as to those bonds.

As to the $39,000.00 of bonds which in fact belonged to Mays, but which were carried among the assets of the bank and which the county in good faith accepted from the bank as its property, the situation is not so simple. It is urged here, although not pleaded and apparently not argued below, that the decisions of the Supreme Court in Marion v. Sneeden, supra, and Texas & Pacific Ry. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 417, 78 L.Ed. 777, are applicable only when the bank pledges its own bonds and not when it wrongfully pledges bonds of a customer left for safekeeping. While those cases involved pledges of a bank's own assets, we do not understand the decisions to be so limited. The decisions were based upon the lack of power of a national bank to secure any deposits except those of the United States. The court said, as the basis of its decision, this:

"The measure of their powers is the statutory grant; and powers not conferred by Congress are denied." Texas & Pacific Ry. Co. v. Pottorff, supra.

The court then examined the statutes and determined that, with exceptions not here pertinent, national banks had no power to secure deposits. In answering the argument as to estoppel, the court further said:

"It is the settled doctrine of this court that no rights arise on an ultra vires contract, even though the contract has been performed; and that this conclusion cannot be circumvented by erecting an estoppel which would prevent challenging the legality of a power exercised."

It is said that national banks do pledge securities belonging to its officers or stockholders to secure deposits, with the consent of the owners. But such pledges are in legal effect made by the owners and not the bank and here we are not dealing with a pledge made by Mays or with his consent. The contract by the bank was an agreement to pledge the bonds as its assets to secure the county deposit. Such a contract was ultra vires, and the county acquired no rights thereunder.

Furthermore, the county is in no position to assert the bonds were pledged as Mays' bonds and not as bonds of the bank. The county defeated Mays in the state court suit by establishing the fact that it took the bonds as the property of the bank. It here seeks to defeat the bank by establishing the fact that the bonds were the property of Mays. The county must be consistent. Since Mays never authorized the pledge, the county could only prevail as to Mays by showing that it dealt with the bonds as property of the bank; failing in that, it must have lost as to Mays. Having taken that position, it should not now be permitted to defeat the receiver by reliance upon the fact that the bonds were not the property of the bank. We may put it another way. The bank's records disclosed it to be the owner of the bonds. When the county accepted them, the county either did or did not treat them as property of the bank. Mays sued the county. To defeat Mays the county established the fact that it believed them to be the property of the bank, and accepted them as such.

The receiver now sues. To defeat this action, the county now takes a position directly contrary to that it successfully took to defeat Mays, to wit, that the bonds were not the property of the bank but the property of Mays. If the argument is sound, then we have this situation: The county is not entitled to keep the bonds if they belong to the bank under the Sneeden Case, nor if they belong to Mays because they were pledged without his knowledge; yet it may keep them by alleging in the state court they took them as the property of the bank and in this court that they were pledged as the property of Mays. We cannot lend our assent to an argument leading to such an anomalous result. The bonds belonged either to Mays or the bank, and the county is not entitled to retain them in either case. The apposite principle of law is laid down in Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578, as follows:

"It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

To the same effect, see Axelrod v. Osage Oil & Refining Co. (C.C.A.8) 29 F.(2d) 712, 729, where the purchaser of an oil lease was held bound by a position taken in other litigation in another court.

534

 This brings us to the defense pleaded, that the receiver is bound by the judgment rendered in the state court in the action Mays brought against the county. The fact that the Supreme Court of the United States, a few months later, construed the National Banking Laws contrary to the state supreme court in no wise impairs the binding force of that judgment. The issue in that case stands adjudicated, to wit, that Mays is not entitled to recover the bonds or their value from the county.

But does this adjudication bind the receiver? He was not a party to that suit. He did not have his day in court in that action. The receiver can only be bound if he was in privity with Mays. The suit of Mays was brought after the bank became a bailee of the bonds, after it had breached its safekeeping agreement and incurred a liability to Mays for conversion, and after its cause of action to recover the bonds or their value from the county arose. While a judgment binds those who acquire an interest in the property affected thereby after the suit is commenced, it does not bind those whose interest attached prior to the commencement of the suit. In Dull v. Blackman, 169 U.S. 243, 248, 18 S.Ct. 333, 335, 42 L.Ed. 733, the court said:

"We remark again that while a judgment or decree binds not merely the party or parties subject to the jurisdiction of the court, but also those in privity with them, yet that rule does not avail the plaintiffs in error; for Phelan acquired his rights prior to the institution of the suit in New York, and was therefore not privity to that judgment."

The Supreme Court of Oklahoma, in De Watteville v. Sims, 44 Okl. 708, 146 P. 224, 226, held, with liberal citation of authority, that "a judgment in an action commenced subsequently to a purchase of real estate is not binding upon the purchasers not parties thereto." In Freeman on Judgments (5th Ed.) § 440, the author states:

"It is well understood, however, though not usually stated in express terms in works upon the subject, that no one is privy to a judgment whose succession to the rights of property thereby affected, occurred previously to the institution of the suit."

It is familiar law that a tenant is not bound by a judgment against his landlord in a suit brought after his tenancy attaches.

It is argued, however, that such is not the law as to bailees of personal property. We see no reason for a distinction between real and personal property in this regard. If a bailee has any rights in or to the property, such rights should not be cut off by a suit subsequently brought by or against the bailor to which the bailee is not a party. A bailee may have no interest in the property to protect, in which event his suit fails, not because of the adjudication against the bailor, but because the bailee has no interest.

The county asserts that since the bank was a gratuitous bailee, it had no interest in the bonds except the right of possession; that when it parted with possession the bailment terminated, the bank no longer had any interest in the bonds, the sole interest was in Mays and the judgment against Mays bound the bank. This argument assumes that the bailee's action is based upon his contract of bailment. It is not. His right to sue is predicated upon his liability to the bailor. An analogous argument made here was made in Pendleton v. Benner Line, 246 U.S. 353, 38 S.Ct. 330, 331, 62 L.Ed. 770, and refuted. There a bailee brought a suit against a third party for damage to the property in its possession; the bailee had no interest in the property and had not paid the owner nor been called upon to pay him. The bailee, however, was liable to the owner. The wrongdoer resisted recovery on the ground that the right of the bailee to recover from a third party rested on the contract of bailment, and there was no such contract. The Supreme Court allowed the bailee to recover, holding,

"The ground upon which bailees have been allowed to recover the full value of goods from wrongdoers has been stated for centuries to be their liability over. Y.B. 9 Ed. IV, 34, pl. 9, is an example of what has been repeated from that day to this. See Brewster v. Warner, 136 Mass. 57, 59, 49 Am.Rep. 5."

The authorities uniformly hold that a gratuitous bailee may sue a third party to recover the property or for damage thereto. Yet the only interest the bailee has arises because of his liability to the bailor. In The W. C. Block (C.C.A.2) 71 F.(2d) 682, 683, the court said:

"For centuries it has been the settled rule, both at common law and in the admiralty, that either the bailor (in the present case, the buyer, McNulty) or the bailee (the libelant) might sue the tort-feasor for destruction of the bailed goods."

In Yrisarri v. Clifford, 32 N.M. 1, 249 P. 1011, the court held that a gratuitous bailee

could sue a third party for damages to the bailed property and recover the full damage, and cited many cases in support. See, also, Lawson on Bailments, p. 34. Cases cited by the county to the effect that the bailor also may sue do not militate against this rule.

If A lends his car to B and B wrongfully lends it to C, B has no interest if C returns the car undamaged to A. But if A sues B and recovers judgment for the value of the car, then B has a right of action over to recover the car from C. So here. The moment the bank wrongfully delivered Mays' bonds to the county, two causes of action arose; one in Mays against the bank for the wrongful conversion; being so liable to Mays, simultaneously there arose a cause of action in the bank over against the county for the return of the bonds pledged in violation of the National Bank Act.

Cases are cited to the effect that a recovery for loss or damage to the bailed property by either bailor or bailee binds both, and this is so because there can be but one recovery; and that where the bailee sues, but the bailor directs the litigation, the bailor is bound; and statements without qualification may be found that a bailee is bound by a judgment against the bailor. In many cases, such result follows. If it is adjudicated between the bailor and a third party acquiring possession from the bailee that the bailor never owned the property, it is said that such adjudication binds the bailee who derived title from the bailor. But that is not this case. Mays' actual ownership was not challenged in the state court suit; it was adjudicated that the county acquired good title through one without title because of the characteristics of negotiable paper. None of the cases cited or examined repudiates the underlying principle that every man with an interest in property is entitled to his day in court; that principle applies to the relationship of

bailor and bailee as it does to landlord and tenant. If an interest in property is acquired pending litigation, different rules apply; but if his interest attaches before the suit, he must be made a party or his right cannot be determined.

From the date of the pledge of the Mays bonds the bank had a justiciable interest therein; from that date it was liable to Mays, and had a right to recover over against the county on account of that liability, and on that cause of action it was entitled to its day in court. We conclude that the receiver is not bound by the judgment in the action between Mays and the county.

The judgment against the county is, because of the off-set, more than $5,000.00 less than Mays' claim, and nearly $6,000.00 less than the amount the county received for Mays' bonds. No objection is made to crediting the county with dividends to which it was entitled on its deposit.

One question relating to the cross bill, not raised below nor in the briefs here but suggested on the oral argument, remains for consideration.

A cross bill is a bill brought by a defendant in a suit against the plaintiff in the same suit, or against another defendant in the same suit, or against both, touching the matters in question in the original bill.[2]

Its purpose is either to obtain discovery of facts from the complainant or codefendant in aid of the defense of the original bill or to bring before the court new matter in aid of the defense to the original bill;[3] or to obtain some affirmative relief as to the matters in issue in the original bill;[4] or to obtain full relief for all parties and a complete determination of all controversies which arise out of the matters charged in the original bill.[5]

[2] Morgan's Louisiana & T. R. & S. Co. v. Texas Central Ry. Co., 137 U.S. 171, 200, 11 S.Ct. 61, 34 L.Ed. 625; Ayres v. Carver, 17 How. 591, 594, 15 L.Ed. 179; Mathis v. Ligon (C.C.A. 10) 39 F.(2d) 455, 457, certiorari denied 282 U.S. 846, 51 S.Ct. 26, 75 L.Ed. 751.

[3] Morgan's Louisiana & T. R. & S. Co. v. Texas Central Ry. Co., 137 U.S. 171, 200, 11 S.Ct. 61, 34 L.Ed. 625; Ayres v. Carver, 17 How. 591, 594, 15 L.Ed. 179.

[4] Kingsbury v. Buckner, 134 U.S. 650, 677, 10 S.Ct. 638, 33 L.Ed. 1047; Veach v. Rice, 131 U.S. 293, 317, 9 S.Ct. 730, 33 L.Ed. 163.

[5] Morgan's Louisiana & T. R. & S. Co. v. Texas Central Ry. Co., 137 U.S. 171, 200, 11 S.Ct. 61, 34 L.Ed. 625; Perkins Oil Co. v. Eberhart, 107 Tenn. 409, 64 S. W. 760; Richards v. Todd, 127 Mass. 167, 169, 170; Bassill v. Bassill, 207 Mass. 365, 93 N.E. 600; Springfield Milling Co. v. Barnard & Leas Mfg. Co. (C. C.A.8) 81 F. 261, 263; Grossman v. United States (C.C.A.7) 280 F. 683.

In Springfield Milling Company v. Manufacturing Company, supra, the court,

A cross bill which seeks affirmative relief is in the nature of an original bill.[6]

According to some authorities new parties may not be brought into the suit by cross bill.[7] But many authorities hold that new parties may be brought in by cross bill which seeks affirmative relief, and shows that the persons added are necessary parties, that is, that they have an interest in or material connection with the subject matter in the suit between the parties to the original bill.[8]

Here, however, on motion of the bank and receiver, acquiesced in by Mays, the county was made a party to the original bill by order of court entered before the cross bill was filed.

To establish his right to a preferred claim, Mays had to show:

(1) That he deposited the bonds with the bank for safekeeping.

(2) That the bank wrongfully converted the bonds by undertaking to pledge them to the county to secure its deposit.

(3) That thereupon the bank became liable to Mays for the bonds and acquired a cause of action over against the county because of its liability to Mays.

(4) That Mays was entitled to a preferred claim upon that cause of action and any recovery the bank might make against the county thereon.

The facts that Mays had to establish on his original bill also established the cause of action in the cross bill against the county. The right of the bank to recover over against the county was an issue tendered by the original bill and was a matter in question in the original bill. A recovery by the bank over against the county was essential to complete relief to Mays on his original bill.

The cross bill did not bring in new matters but was to obtain affirmative relief touching matters in issue in the original bill and to obtain full relief for all parties and a complete determination of all the controversies which arose out of the matters charged in the original bill.

But if the cross bill was a cross bill in the nature of an original bill we think it was proper. In Morgan's Louisiana & T. R. & S. Co. v. Texas Central Ry. Co., 137 U.S. 171, 200, 11 S.Ct. 61, 70, 34 L.Ed. 625, the court said:

" 'A cross-bill,' says Mr. Justice Story, (Eq.Pl. § 389), 'ex vi terminorum implies a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. A bill of this kind is usually brought, either (1) to obtain a necessary discovery of facts in aid of the defense to the original bill, or (2) to obtain full

---

speaking through Judge Walter H. Sanborn, said:

"The office of a cross bill is either to warrant the grant of affirmative relief to the defendant in the original suit, to obtain a discovery in aid of the defense in that suit, to enable the defendant to interpose a more complete defense than that which he could present by answer, or to obtain full relief to all parties, and a complete determination of all controversies which arise out of the matters charged in the original bill. * * * The issues raised by the cross bill must be so closely connected with the cause of action in the original suit that the cross suit is a mere auxiliary or dependency upon the original suit, but, subject to this qualification, new facts and new issues may properly be presented by a cross bill."

6 Morgan's Louisiana & T. R. & S. Co. v. Texas Central Ry. Co., 137 U.S. 171, 201, 11 S.Ct. 61, 34 L.Ed. 625; Jackson v. Simmons (C.C.A.7) 98 F. 768, 773.

7 In Shields v. Barrow, 17 How. 130, 144, 145, 15 L.Ed. 158, the court said:

"New parties cannot be introduced into a cause by a cross-bill. If the plaintiff desires to make new parties, he amends his bill, and makes them. If the interest of the defendant requires his presence, he takes the objection of nonjoinder, and the complainant is forced to amend, or his bill is dismissed. If, at the hearing, the court finds that an indispensable party is not on the record, it refuses to proceed. These remedies cover the whole subject, and a cross-bill to make new parties, is not only improper and irregular, but wholly unnecessary."

See, also, United States v. Woods (C. C.A.8) 223 F. 316; Thruston v. Big Stone Gap Imp. Co. (C.C.Va.) 86 F. 484.

8 Brandon Mfg. Co. v. Prime, Fed.Cas. No. 1,810, 14 Blatchf. 371; McComb v. Chicago, St. L. & N. O. R. Co. (C.C.N. Y.) 7 F. 426, 427; Ulman v. Iaeger's Adm'r (C.C.W.Va.) 155 F. 1011, 1016, 1017; Mercantile Trust Co. v. Atlantic & P. R. Co. (C.C.Cal.) 70 F. 518, 525.

relief to all parties, touching the matters of the original bill.' And, as illustrative of cross-bills for relief, he says, (section 392): 'It also frequently happens, and particularly if any question arises between two defendants to a bill, that the court cannot make a complete decree without a cross-bill, or cross-bills, to bring every matter in dispute completely before the court, to be litigated by the proper parties, and upon the proper proofs.'

"It seems to us that in order that a decree might be made upon the whole matter in dispute, brought completely before the court, the bill in question was necessary, and was correctly styled a 'cross-bill.' In no proper sense were new and distinct matters introduced by it, which were not embraced in the original and amended and supplemental bills, and, while it sought equitable relief, it was such as, in point of jurisdiction over the subject-matter, the court was competent to administer. It may be that, so far as it sought the further aid of the court beyond the purposes of defense to the original bill, it was not a pure cross-bill; but that is immaterial. The subject-matter was the same, although the complainant in the cross-bill asserted rights to the property different from those allowed to it in the original bill, and claimed an affirmative decree upon those rights. A complete determination of the matters already in litigation could not have been obtained except through a cross-bill, and different relief from that prayed in the original bill would necessarily be sought. * * * And whether this bill be regarded as a pure cross-bill, as an original bill in the nature of a cross-bill, or as an original bill, there is no error calling for the disturbance of the decree because the court proceeded upon it in connection with the other pleadings."

The judgment against the county is affirmed. The judgment in favor of Mays' administrator is modified by adding after the words "decreed to be a preferred claim" the words "as to $702.39 and such sums as may be recovered by the receiver from the county."

Costs in this court in Number 1423 will be taxed against the administrator and in Number 1424 against the county.

Decree in Number 1423 modified.

Decree in Number 1424 affirmed.